Victor BARRIOS, Plaintiff–Appellant,

v.

CALIFORNIA INTERSCHOLASTIC FEDERATION; California Interscholastic Federation Southern Section, Defendants–Appellees.

No. 00–56479.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2001

Filed Jan. 16, 2002

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Lew Hollman, Center for Law in the Public Interest, Los Angeles, California, for the plaintiff-appellant.

Judith Gold, Lynberg & Watkins, Los Angeles, California, for the defendants-appellees.

Brad Seligman, Berkeley, California, for amici curiae The Impact Fund, Disability Rights and Education Defense Fund, the Employment Law Center, and Protection & Advocacy, Inc.

Before: PREGERSON, TASHIMA, and BERZON, Circuit Judges.

TASHIMA, Circuit Judge:

Plaintiff–Appellant Victor Barrios ("Barrios") sued Defendants–Appellees California Interscholastic Federation ("CIF") and California Interscholastic Federation Southern Section ("CIFSS") for discrimination claims arising under federal and state law. After entering into a settlement agreement, Barrios moved for attorneys fees and costs as the "prevailing party."[1] The district court denied Barrios' motion. Barrios timely filed this appeal, arguing that he is entitled to reasonable attorneys' fees and costs under both federal and state law. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

## I. FACTUAL BACKGROUND

Victor Barrios is an assistant baseball coach for Westminster High School, part of the Huntington Beach Union School District. Westminster High School is a member of both the CIF and CIFSS.[2] Barrios has been paraplegic since 1992. As of 1999, he had coached high school baseball from an athletic wheelchair for four consecutive seasons in the CIFSS league. During games, Barrios' responsibilities included acting as a first or third base coach, which required him to be in the coach's box just outside the baseline to interact

---

1. The district court had not yet entered any judgment or order of dismissal, and thus still had jurisdiction over the case, when the attorneys' fees motion was filed.

2. The CIF is a statewide, voluntary non-profit association, made up of 1,230 public and private high schools, which receives funding from state and local sources. Among other things, CIF promulgates rules regulating the qualifications of officials and coaches in its member schools' baseball programs. CIF is broken down into 10 geographical regions, one of which is CIFSS. CIFSS too has authority to promulgate rules for baseball games played by member schools within its jurisdiction. Unless the context otherwise requires, we use "CIF" to refer to both the "CIF"and the "CIFSS".

with his players, and deciding when to make pitching changes, which required him periodically to visit the pitcher's mound to assess the strength, energy, and focus of his pitcher.

Barrios' athletic wheelchair was specially adapted for the rigors of sports, where it is commonplace for collisions to occur both with other wheelchairs and with able-bodied referees. According to the manufacturer of Barrios' wheelchair: "[The athletic wheelchair is] used in wheelchair basketball, hockey and other contact sports along with everyday use. Many times competing players will collide with each other. And on some occasions able-bodied referees will make contact with the chairs at high speeds. To date, no ·injuries have been reported as a result of wheelchair design. We have been producing wheelchairs for over 30 years." In the years that Barrios has coached high school baseball, he has never been injured nor caused an injury with his wheelchair.

At the first game of the 1999 season, on February 27, an umpire told Barrios before the game that, for his own safety, he would not be permitted to coach on the field. When Barrios protested, the umpire issued an ultimatum: either Barrios forego coaching on the field or the umpire would leave. Barrios and the other team's coach agreed to play the game without the umpire so that Barrios could fulfill his duties as an assistant coach.

On March 6, 1999, Barrios was scheduled to coach a double-header in games officiated by an umpire from the Orange County Baseball Officials Association ("OCBOA"). The umpire informed Barrios that the OCBOA would not allow him onto the field to coach runners or pitchers because his presence on the field would "slow the game down." At the next game on March 9, an OCBOA umpire again prohibited Barrios from coaching on the field.

On March 10, William R. Clark ("Clark"), the CIFSS Assistant Commissioner, wrote Kathleen Miller ("Miller"), the principal of Westminster High School. Clark informed Miller that the CIFSS would permit Barrios to coach from the field, but only if "all exterior hard surfaces of his wheelchair shall be covered with 'no less than one-half inch thick, high density, closed cell polyurethane, or an alternate material of the same minimum thickness and similar properties.'" The language quoted by Clark came from a rule in the National Federation Football Rulebook that pertained to the padding of hard surfaces of football players' equipment. Clark further suggested that "this letter be kept with coach Barrios to present to any officials challenging his status."

At the next game, on March 19, an OCBOA umpire asked Barrios if he had complied with the letter sent by Clark. Barrios replied that he had neither obtained the padding nor brought Clark's permission letter. While the umpire allowed Barrios to coach the game,[3] he warned Barrios that other OCBOA umpires would not allow him onto the field without compliance with Clark's letter. In fact, OCBOA umpires subsequently excluded Barrios from on-field coaching in a game held on March 30.

Barrios sought legal assistance from Laura Diamond ("Diamond"), an attorney with the Center ·for Law in the Public Interest. Diamond contacted Clark on April 5, 1999, in an effort to resolve the situation. Clark responded to Diamond on April 6, reiterating the "need to have any hard surfaces padded" and asserting that the head umpire has authority to require such padding. After Clark's response,

---

**3.** Barrios speculates that the umpire allowed him to coach the March 19 game only because of media presence.

Barrios was, once more, on April 14, excluded by OCBOA umpires from coaching a game.

On April 20, Jilana Miller ("Miller") from the Center for Law in the Public Interest, and Christopher Knauf ("Knauf") from the Western Law Center for Disability Rights sent a letter to the CIF, the CIFSS, and the OCBOA. In this letter, Miller and Knauf alleged discrimination against Barrios, demanded that certain immediate conditions be satisfied to prevent litigation,[4] and warned that if Barrios was excluded from coaching in the upcoming April 23 game, "we will enforce Mr. Barrios' rights under the law."

On April 21, Diamond discussed Barrios' situation with Andrew Patterson ("Patterson"), legal counsel for the CIF. In a letter dated April 22, Patterson acknowledged that Barrios "is not a safety hazard," suggested that "there has been a glitch with the umpires with respect to the presence of Mr. Barrios wheelchair on the field of play," and promised that he would obtain a "variance" from the National Federation to permit Barrios' coaching presence on the baseball field. No details were offered regarding the scope of such a variance or when it would be forthcoming.

Despite Patterson's assurances, however, Barrios was again excluded from on-field coaching on April 23. Later that day, Knauf both faxed a letter and left messages at Clark's office, informing him of Barrios' intent to file a complaint and seek a temporary restraining order against the CIF, CIFSS, and OCBOA on April 26. Barrios, in fact, filed his complaint and application for a temporary restraining order on April 27, 1999.

On April 28, Barrios again was excluded from coaching his high school baseball team.

On April 29, Patterson spoke with Miller, informing her that the CIF had granted Barrios a variance to coach his team on the playing field and that the OCBOA would be informed of this variance. In an effort to memorialize this agreement in writing, Miller drafted, signed, and sent Patterson a stipulation whereby Barrios would "withdraw the ... application for a Temporary Restraining Order" if the CIF, CIFSS, and OCBOA agreed to "allow Plaintiff to coach from the field, without condition, effectively immediately, until the last game of the season...." Patterson refused to sign this stipulation, and the hearing scheduled for April 30 went forward.

The parties met with the court in chambers on April 30, where Patterson agreed orally that Barrios should be allowed to coach on the field for the remainder of the season. In light of this commitment, the court declined to rule on the application for a temporary restraining order. Again Barrios' counsel sought to memorialize this commitment via a written stipulation, again Patterson refused to sign the proffered stipulation, and again Barrios was excluded, at the next game following the meeting with the court, from coaching his baseball team despite Patterson's in-chambers oral commitment.

Patterson sent letters to Miller, on May 13 and June 10, 1999, informing her that

---

4. Miller and Knauf, on Barrios' behalf, demanded that: (1) Barrios be permitted to coach on-field without the need of any permission letter or wheelchair modification; (2) the CIF, CIFSS, and OCBOA notify their member schools that coaches in wheelchairs are entitled to equal access; (3) the CIF, CIFSS, and OCBOA issue a written apology to Barrios; (4) the CIF, CIFSS, and OCBOA compensate Barrios in the amount of $25,000 for the discrimination, humiliation, and emotional distress that he had suffered on account of their discrimination; and (5) the CIF, CIFSS, and OCBOA pay $2,500 in attorneys' fees and costs.

Barrios had been granted a variance and expressing his frustration over (what he viewed to be) unnecessary litigation. Patterson, however, remained unwilling to sign a written stipulation regarding Barrios' variance. On June 4, Miller responded to Patterson's concerns, explaining that Barrios' recurrent exclusion, in the face of purported "variances," made legal action necessary.

On July 12, Barrios' counsel sent a lengthy proposed settlement agreement to the CIF's counsel. Defense counsel responded to this proposal on August 11, outlining their concerns. On August 12, the CIF's counsel requested (with the agreement of Barrios' counsel) an extension to September 10, 1999, to file a responsive pleading "in order for us to continue to explore the possibility of reaching a settlement agreement."

Over the next few months, the dialogue between the parties continued, finally culminating in a settlement agreement. The agreement provided that Barrios "shall continue to be allowed to coach baseball on the field, absent a material change in his ability to coach or in his wheelchair." Barrios also was to receive $10,000 in compensatory damages. The agreement further provided that "the PARTIES agree that the issue of whether any PARTY is the prevailing party and whether any PARTY is entitled to attorneys' fees, and, if so, the amount thereof, is expressly reserved for the Court to decide upon motion by any PARTY." On April 3, 2000, Barrios filed a motion for attorneys' fees and costs.

On May 16, 2000, the district court entered a judgment and order according to the terms of the settlement agreement. Approximately two months after the parties executed the settlement agreement and one month after the district court entered the judgment, the CIF moved to vacate the judgment on the ground that the parties never discussed during the set-tlement negotiations whether a judgment or stipulation for dismissal would be filed. The CIF argued that the district court should vacate the judgment because otherwise Barrios would be given the opportunity to execute on the judgment not contemplated by any of the parties during the settlement negotiations. In his opposition to the CIF's motion, Barrios conceded that the settlement did not address whether a judgment or stipulation for dismissal would be filed, but argued that a judgment according to the terms of the settlement was necessary because the CIF still had not paid Barrios the $10,000 in compensatory damages. The CIF's motion was granted on June 21, and an order vacating the May judgment was entered on July 7, 2000.

On August 2, 2000, the district court entered an order denying Barrios' motion for attorneys' fees. On August 11, the parties stipulated to a dismissal with prejudice. The stipulation makes no mention of the issue of attorneys' fees. Barrios timely appeals.

## II. STANDARD OF REVIEW

 We review a district court's decision to deny attorneys' fees for an abuse of discretion. *Shaw v. City of Sacramento*, 250 F.3d 1289, 1293–94 (9th Cir.2001). A trial court abuses its discretion if its ruling on a fee motion is based on an inaccurate view of the law or a clearly erroneous finding of fact. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir.1997). Any elements of legal analysis and statutory interpretation that figure in the district court's attorneys' fees decision are reviewed de novo. *Webb v. Ada County, Ida.*, 195 F.3d 524, 526 (9th Cir.1999). Factual findings underlying the district court's decision are reviewed for clear error. *Id.*

## III. DISCUSSION

Barrios' complaint alleged violations of federal and California law. After entering

into a settlement agreement with the CIF, Barrios moved for reasonable attorneys' fees and costs. The district court first determined that Barrios was a "prevailing party" because he had both achieved some aspect of the benefit sought in bringing the suit and obtained an enforceable right to money damages. The district court further concluded, however, that Barrios' victory was at best *de minimis* and thus undeserving of attorneys' fees and costs. This conclusion constitutes legal error under federal and California law.

### A. *The Right to Fees and Costs Under Federal Law*

Barrios' federal claim arose under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (1999). The ADA, specifically 42 U.S.C. § 12205, permits the "prevailing party" to seek attorneys' fees and costs. The Supreme Court has held that a prevailing plaintiff under a statute so worded "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation and internal quotation marks omitted).

■■■■■ The first question to be resolved, then, is whether Barrios is a "prevailing party" under the terms of the ADA. The district court's conclusion that Barrios was a "prevailing party," is correct. Under applicable Ninth Circuit law, a plaintiff "prevails" when he or she enters into a legally enforceable settlement agreement against the defendant:

> "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do.

*Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir.2000) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).

Here, the settlement agreement prohibits the CIF from excluding Barrios from on-field coaching of baseball games, and requires it to pay Barrios $10,000 in damages. Given that Barrios can enforce the terms of the settlement agreement against the CIF, the district court correctly concluded that Barrios was the "prevailing party" in his civil rights litigation.[5]

**5.** This conclusion is unaffected by the Supreme Court's recent decision in *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In *Buckhannon*, the Court held that a plaintiff who brought an ADA action could not obtain prevailing party status for the purpose of being awarded attorneys' fees when the West Virginia state legislature eliminated the statutes being challenged in the litigation. *Id.* at 1843. The Court concluded that the "catalyst theory"—whereby a party is considered prevailing so long as he or she can prove that the pending litigation was a catalyst that brought about the policy change—is not a permissible basis for the award of attorneys' fees. *Id.* at 1840. In light of *Buckhannon*, this court too has rejected the "catalyst theory." *Bennett v. Yoshina*, 259 F.3d 1097 (9th Cir.2001) (recognizing *Buckhannon*'s invalidation of the catalyst theory, and corresponding Ninth Circuit precedent).

Barrios, however, does not claim to be a "prevailing party" simply by virtue of his being a catalyst of policy change; rather, his settlement agreement affords him a legally enforceable instrument, which under *Fischer*, makes him a "prevailing party." While dictum in *Buckhannon* suggests that a plaintiff

■ The district court, however, erred in concluding that, despite Barrios' status as a "prevailing party," he nonetheless was not entitled to reasonable attorneys' fees and costs. The Court in *Farrar* recognized that in limited situations " 'a technical victory may be so insignificant ... as to be insufficient to support prevailing party status.' " 506 U.S. at 113, 113 S.Ct. 566(quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)); *see also id.* at 115, 113 S.Ct. 566 ("In some circumstances, even a plaintiff who formally 'prevails'... should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party."); *Tex. State Teachers*, 489 U.S. at 792, 109 S.Ct. 1486 ("Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis* a district court would be justified in concluding that [denial of attorneys' fees is appropriate].").

The district court concluded that Barrios' victory was merely *de minimis*, and thus undeserving of reasonable attorneys' fees and costs. According to the district court: "Contrary to plaintiff's arguments, no broad policy changes were achieved. The relief plaintiff sought for himself already had been granted prior to the filing of his complaint and was not brought about as a result of the litigation." Furthermore, the district court highlighted Barrios' original complaint, which sought "compensatory damages, statutory damages, treble damages, and punitive damages," impliedly framing the $10,000 settlement as comparatively small. These findings are clearly erroneous as a matter of federal law.

First, the monetary damages received by Barrios alone disqualify his settlement from being characterized as *de minimis*. In the original settlement offer, tendered by Barrios' counsel on April 20, 1999, Barrios sought damages in the amount of $25,000. The district court's classification of Barrios' settlement award of $10,000 as *de minimis* cannot be reconciled with applicable Ninth Circuit law. In *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir.1996), for example, the plaintiff was awarded $17,500 in compensatory damages. As a matter of law, *Morales* held that this verdict was not *de minimis* and was sufficient to justify an award of attorneys' fees and costs totaling nearly $140,000.

Second, in addition to monetary damages, the legally enforceable policy change memorialized in the settlement agreement significantly alters the legal relationship between Barrios and the CIF, and for this reason alone, also disqualifies the settlement from being characterized as merely *de minimis*. Finally, the district court's finding that "[t]he relief plaintiff sought for himself already had been granted prior to the filing of his complaint" is clearly erroneous. On at least two separate occasions prior to the initiation of litigation, Patterson assured Barrios that a variance either was being sought or had been granted. After both assurances, however, Barrios was nonetheless prohibited from coaching his team. In light of these repeated "glitch[es]," where Patterson said one thing, but the umpires did another, it was reasonable for Barrios to have insisted

"prevails" only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree, 121 S.Ct. at 1840 n. 7, we are not bound by that dictum, particularly when it runs contrary to this court's holding in *Fischer*, by which we are bound. Moreover, the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs.

on a formal legal agreement entitling him to coach on the field. The district court's finding that Barrios had been granted relief prior to initiation of the law suit finds no support in the record.

Barrios had been subjected to discrimination on account of policies in effect prior to the initiation of litigation. Despite telling Barrios that he had been granted a "variance," the CIF refused to sign a legally binding agreement, and the discrimination continued. Only with the settlement agreement did Barrios obtain a legally enforceable right that ensured that promises made by the CIF effectively translated into non-discrimination on the baseball diamond and in the coaching box.

In concluding that the settlement was *de mimimis*, the district court relied heavily on Barrios' efforts to exact "broad . . . 'policy changes.'" This reliance, however, is misplaced. The CIF never once offered a monetary settlement until finally offering the settlement agreement that brought this litigation to a close. On April 20, 1999, before filing the complaint, Barrios demanded $25,000 in damages to settle the matter. While the CIF continued to assure Barrios that he could coach, they never agreed (prior to the settlement agreement) either to put that assurance in writing or to compensate Barrios with money damages. And while Barrios did, in the interim, propose "broad . . . 'policy changes,'"

the fact that Barrios accepted the first settlement offering both money damages and an enforceable right to on-field coaching confirms only that Barrios acted reasonably in bringing this litigation to an expeditious end.

■ Furthermore, while Barrios did, during settlement negotiations, seek relief far broader than what he eventually received in the settlement agreement, this fact alone does not render *de minimis* the monetary award and policy change that he did in fact ultimately receive. *See Hensley*, 461 U.S. at 431, 103 S.Ct. 1933 ("It also is not legally relevant that plaintiffs' counsel expended a certain limited amount of time pursuing certain issues of fact and law . . . upon which plaintiffs ultimately did not prevail. Since plaintiffs prevailed on the merits and achieved excellent results for the represented class, plaintiffs' counsel are entitled to an award of fees for all time reasonably expended . . . .") (quoting *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, 1974 WL 180 (C.D.Cal.1974) (internal quotation marks omitted)).

### B. *The Right to Fees and Costs Under California Law*

■ Barrios state law claims arose under the California Unruh Act, Cal. Civ. Code § 51–52 (1995), and the California Disabled Persons Act, Cal. Civ.Code § 54–55 (1995).[6]

---

**6.** The CIF argues that the district court did not have jurisdiction over the state law claims because Barrios did not file an administrative claim, which it contends is a prerequisite to filing his complaint in federal court. Under the California Tort Claims Act, "no suit for money or damages may be brought against a [local] public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board. . . ." Cal. Gov't Code § 945.4. A "local public entity" is defined as "a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State. . . ." Cal. Gov't Code

§ 900.4. The only category under which the CIF could conceivably fit is "public agency." The CIF, however, has not developed this argument and there is nothing in the record to indicate that, even assuming it is a public agency, it has complied with the requirements of Cal. Gov't Code § 53051(a) & (b) so as to qualify it to be listed on the California Secretary of State's "Roster of Public Agencies." *See* Cal. Gov't Code § 53051(c). If a public agency fails to comply with the requirements of § 53051, "the failure to present a claim does not constitute a bar or defense to the maintenance of a suit against such public agency. . . ." Cal. Gov't Code § 946.4(a).

Because we conclude that Barrios is entitled to attorneys' fees under § 55 of the Disabled Persons Act, we need not explore the other possible bases suggested by Barrios for an award of fees under state law. Section 55 authorizes private injunctive relief for violations of the Act, and also provides that "[t]he *prevailing party* in the action shall be entitled to recover reasonable attorney's fees." Cal. Civ.Code § 55 (emphasis added). Unlike the Unruh Act, which the CIF argues requires a finding of liability before attorneys' fees can be awarded, *see Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135 n.5 (9th Cir.2001) (en banc) (noting that the Unruh Act provides for attorneys' fees "upon a finding of liability"), § 55 does not require, as a prerequisite to an award of attorneys' fees, that there be a judgment of liability.

"Moreover, a plaintiff will be considered a prevailing party where the lawsuit was the catalyst motivating the defendants to modify their behavior or the plaintiff achieved the primary relief sought." *Donald v. Cafe Royale, Inc.*, 218 Cal.App.3d 168, 266 Cal. Rptr. 804, 814 (1990) (citation omitted). Here, Barrios' lawsuit certainly "motivated" the CIF to modify its behavior; Barrios also achieved

the "primary relief sought," namely, money damages and the right to continue with his on–field baseball coaching. Barrios is thus entitled to an award of reasonable attorneys' fees under state law, as well as under federal law.

## IV. CONCLUSION

For the foregoing reasons, we hold that the district court erred in concluding that the benefits Barrios obtained in the settlement agreement were *de minimis*. The order of the district court denying attorneys' fees to Barrios is therefore,

**REVERSED** and **REMANDED** for further proceedings.

---

Unlike a city or county, it is not self-evident that the CIF is a public entity and, on this record, the CIF has failed to show that it is a qualified public agency. Moreover, the CIF has cited no case, and we have been unable to find any, which holds, or even suggests, that a voluntary, non-profit association, made up of both public and private members, is a "local public entity" within the meaning of the California Tort Claims Act, and we decline to so hold.

Because we conclude that the claim filing requirements of the California Tort Claims Act do not apply in this case, we need not reach Barrios' alternative argument that, by entering into the settlement agreement, the CIF has waived any otherwise applicable claim filing requirement. *Cf. Mangold v. Cal.*

*Pub. Util. Comm'n*, 67 F.3d 1470, 1477 (9th Cir.1995) (suggesting that claim filing requirement can be waived if the public entity "waited too long to assert the ground for dismissal"); *Isaacson v. City of Oakland*, 263 Cal.App.2d 414, 69 Cal.Rptr. 379, 382 (1968) (recognizing that a public entity may waive the statute of limitations, but holding that "the evidence adequately supports the court's finding" of no waiver).