BARK, Oregon Natural Resources Council, Mazamas, the Friends of Mt. Hood, Oregon Wildlife Federal, Friends of Tilly Jane, and Hood River Valley Residents Committee, Plaintiffs,

v.

Gary LARSEN, in his official capacity as the Forest Supervisor for the Mt. Hood National Forest, Kim Titus, in her official capacity as the District Ranger for the Mt. Hood River Ranger District of the Mt. Hood National Forest, and the United States Forest Service, an agency of the United States Department of Agriculture, Defendants.

No. CV–02–904–HU.

United States District Court,
D. Oregon.

March 17, 2006.

Ralph Bloemers, Christopher Winter, Cascade Resources Advocacy Group, Gregory J. Dyson, Bark, Portland, OR, for Plaintiffs.

Karin J. Immergut, United States Attorney, District of Oregon, Stephen J. Odell, Assistant U.S. Attorney, U.S. Attorney's Office, Owen L. Schmidt, Special Assistant U.S. Attorney, Office of General Counsel, U.S. Dept. of Agriculture, Portland, OR, for Defendants.

## ORDER

KING, District Judge

The Honorable Dennis J. Hubel, United States Magistrate Judge, filed Findings and Recommendation on February 9, 2006. Plaintiffs filed timely objections to the Findings and Recommendation. When either party objects to any portion of a magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate's report. 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). The matter is before this court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

This court has, therefore, given *de novo* review of the rulings of Magistrate Judge Hubel. This court ADOPTS the Findings and Recommendation of Magistrate Judge Hubel dated February 9, 2006 in its entirety.

IT IS HEREBY ORDERED that Plaintiffs' Motion for Fees (# 87) is denied.

## FINDINGS & RECOMMENDATION

HUBEL, United States Magistrate Judge.

Plaintiffs, a collection of seven environmental groups, move for an award of attorney's fees and costs in connection with this action in which they sought declaratory and injunctive relief under the National Environmental Policy Act, the National Forest Management Act, and the judicial review provisions of the Administrative Procedures Act. Their claims were based on a challenge to the Polallie Cooper Environmental Assessment (EA), a related Decision Notice (DN), and a Finding of No Significant Impact (FONSI).

Following the September 30, 2005 entry of a Joint Stipulation and Order of Dismissal ("September 30, 2005 Dismissal Order"), plaintiffs filed a motion for fees and costs. I granted defendants' motion to bifurcate the issue of whether plaintiffs are "prevailing parties" from the other issues raised by plaintiffs' motion, and set forth a briefing schedule under which defendants would respond, and plaintiffs would reply, only as to the prevailing party determination. Thus, this Findings & Recommendation resolves only that issue. Because, as discussed below, I recommend that defendants prevail on that issue and that plaintiffs' motion for fees and costs be denied, I will not consider any remaining fee and cost issues.

## BACKGROUND

Plaintiffs filed the case on July 8, 2002. Shortly after the case was filed, plaintiffs informed defendants of their intent to file a motion for preliminary injunction. Sec. Winter Declr. at ¶ 2. In response, defendants and plaintiffs engaged in letter and

email correspondence from July 25, 2002, to approximately July 31, 2002, regarding a stipulation to temporarily stay the case. Exhs. A, B, C, & D to Sec. Winter Declr. The correspondence culminated in a stipulation and proposed order submitted to the Court on August 20, 2002. I signed it on August 21, 2002, and it was filed August 22, 2002. I refer to this as the "August 21, 2002 Stipulation & Order."

The August 21, 2002 Stipulation & Order recited, *inter alia:* that defendants agreed to review their position with regard to the defense of the case within one month and that plaintiffs requested that defendants not auction two timber sales and not to award a contract on a third, until defendants could review their position with regard to the defense of the case, in consideration for plaintiffs not filing a motion for temporary restraining order or preliminary injunction. Aug. 21, 2002 Stip. & Order at p. 1.

The August 21, 2002 Stipulation & Order then stipulated that the Court could make and enter the following Order: (1) defendants shall review their position with regard to the defense of the case within approximately one month of the date of the Order; (2) during defendants' review, they shall not auction the two named timber sales and shall not award the contract on the third named timber sale; (3) after defendants completed their review, they shall immediately provide plaintiffs' counsel of record with notice of the results of the review and thereafter, provide plaintiffs with thirty days notice before auctioning the two timber sales and before awarding the contract for the third sale; and (4) temporarily staying all deadlines in the case, as well as discovery and the trial schedule, until defendants completed their review. *Id.* at pp. 1–2.

On November 12, 2002, defendants notified plaintiffs that they had completed their review and, after setting forth their position on the merits of plaintiffs' claims, informed plaintiffs that they intended to proceed with litigation. Exh. E to Sec. Winter Declr. Defendants indicated that they would file a motion to dismiss all but one count against the Polallie Cooper Project, and as to that one count, they would file a motion for summary judgment after resolution of the motion to dismiss. *Id.* The motion to dismiss was then filed on November 15, 2002. An amended motion was filed on January 8, 2003.

Before oral argument on the motion, the parties entered into a stipulation to stay the case pending resolution by the Ninth Circuit of three separate cases which the parties indicated could set dispositive precedent in regard to the instant case. I signed the stipulation on January 31, 2003, and it was entered as an Order on February 2, 2003. It recited that (1) three named cases on appeal to the Ninth Circuit could set dispositive precedent in regard to the instant case; (2) that for purposes of judicial economy, the instant case should be stayed and held in abeyance until the appeal on any of the three cases is decided; and (3) upon decision by the Ninth Circuit in any one of the three cases, the parties in the instant case should notify this Court and either party could request the Court to set a schedule for any additional briefing or oral argument on the pending motion. Jan. 31, 2003 Order at p. 1.

Nothing more happened in the case until September 30, 2005, when I signed the September 30, 2005 Dismissal Order. The September 30, 2005 Dismissal Order recites the pertinent procedural history of the case and then states that the Ninth Circuit has decided all three of the appeals referenced in the January 31, 2003 Order. It further states that on May 9, 2005, before any party requested additional briefing or oral argument on defendants'

motion to dismiss, the Forest Service withdrew the challenged DN for the Pollalie Cooper Project which, among other things, had authorized the three timber sales challenged in the case. *Id.* at ¶ 5. After defendants notified plaintiffs of the withdrawal of the DN, the parties agreed to enter into a stipulation of dismissal of the case. *Id.*

The September 20, 2005 Dismissal Order then provides that the parties stipulated to the dismissal of the action with prejudice, subject to plaintiffs' right to pursue any claims they may have for attorney's fees or costs under the Equal Access to Justice Act, and the right of defendants to defend against any such claims. *Id.* Plaintiffs then timely filed their motion for attorney's fees and costs.

### STANDARDS

■ Under the Equal Access to Justice Act (EAJA), a plaintiff may be awarded attorney's fees and costs against the government if (1) the plaintiff is the prevailing party; (2) the government has not met its burden to show that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable. 28 U.S.C. § 2412(d)(1)(A); *Perez–Arellano v. Smith,* 279 F.3d 791, 793 (9th Cir.2002).

■ A "prevailing party" is one who has been awarded some relief by the court on the merits of at least some of his claims. *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). As the Ninth Circuit has explained,

"a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." ... "A material alteration of the legal relationship occurs when the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." ... In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do.

*Fischer v. SJB–P.D., Inc.,* 214 F.3d 1115, 1118 (9th Cir.2000) (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992)).

In a 2001 case, the Supreme Court rejected the idea that a party is a "prevailing party" for purposes of the fee-shifting provisions of the Fair Housing Amendments Act and the Americans with Disabilities Act, based on a "catalyst theory." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The catalyst theory "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601, 121 S.Ct. 1835.

The Court held that "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (internal quotation omitted). It explained that in contrast to "these examples[,]" the catalyst theory "allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605, 121 S.Ct. 1835. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.*

■ The Ninth Circuit has extended *Buckhannon* to the EAJA. *Perez–Arellano,* 279 F.3d at 794. Thus, "a 'prevailing party' under the EAJA must be one who has gained by judgment or consent decree

a material alteration of the legal relationship of the parties." *Id.* (internal quotation omitted).

## DISCUSSION

Plaintiff relies on Ninth Circuit cases holding that prevailing party status is not limited to those possessing a judgment or consent decree. Based on these cases, plaintiffs argue that the August 21, 2002 Stipulation & Order, and the September 30, 2005 Dismissal Order, provide the required judicially endorsed material alteration in the parties' relationship and thus, qualify plaintiffs as prevailing parties for purposes of the EAJA. Although I agree with plaintiffs as to the law, I reject their argument that the August 21, 2002 Stipulation & Order, or the September 30, 2005 Dismissal Order, satisfy the law's requirements.

■ I agree with plaintiffs that a party need not obtain a judgment or consent decree to be designated a prevailing party. *See Watson v. County of Riverside*, 300 F.3d 1092, 1095 (9th Cir.2002) (plaintiff was prevailing party when he succeeded in obtaining preliminary injunction prohibiting the defendant from introducing a report, which was the subject of plaintiff's litigation, in an administrative termination hearing, even though he later lost on other claims at summary judgment and even though his request for permanent injunctive relief on the claim on which he prevailed was moot at the conclusion of the administrative termination proceedings); *Labotest, Inc. v. Bonta*, 297 F.3d 892, 893, 895 (9th Cir.2002) (plaintiff was prevailing party when court approved and incorporated settlement agreement which included at least part of the relief plaintiff sought); *Barrios v. California Interscholastic Fed.*, 277 F.3d 1128, 1134 (9th Cir.2002) (plaintiff was prevailing party in disability discrimination case when terms of legally enforceable settlement agreement prohibited the defendant from excluding the plaintiff from on-field coaching of baseball games and required the defendant to pay the plaintiff $10,000).

The problem with plaintiffs' argument here is not that plaintiffs did not obtain a judgment or consent decree, but rather that the Orders they rely on do not evidence any actual relief on the merits of their claims materially altering their legal relationship with defendants.

### A. Aug. 21, 2002 Stip. & Order

■ Plaintiffs argue that the August 21, 2002 Stipulation & Order required defendants to do several things that defendants would not otherwise have been obligated to do such as agree to review their position within one month, agree to stay any action on the three timber sales, and agree to notify plaintiffs before re-initiating any action on the timber sales. Because the August 21, 2002 Stipulation & Order prohibited defendants from continuing with the Pollalie Cooper Project as it could have before the legal action, plaintiffs argue that it changed the legal relationship between the parties.

The August 21, 2002 Stipulation & Order was, however, a temporary stay, offering limited interim relief to plaintiffs, and provided no actual relief on the merits. Thus, while it obligated defendants to do something they were not legally obligated to do, it was only of limited duration and effected no substantive relief.

■ As a matter of policy, plaintiffs' position is untenable. Allowing a party to become a prevailing party for purposes of a fee-shifting statute by virtue of the opposing party voluntarily agreeing to review its defenses at the commencement of litigation would completely undermine any incentive for parties to work cooperatively, amicably, and professionally to resolve disputes on their own. Under plaintiffs' position, a court's granting of a joint motion to

extend the time for a defendant to respond to a complaint against it, unopposed by the plaintiff in exchange for a commitment by the defendant to preserve the status quo during the extended time, would qualify the plaintiff as a prevailing party. I reject the notion that the Supreme Court or the Ninth Circuit would endorse such a court order as the type of actual relief on the merits causing a material alteration of the legal relationship between the parties sufficient for prevailing party status.

While the Ninth Circuit has clearly endorsed the idea that legally enforceable settlement agreements meet the required standard, the August 21, 2002 Stipulation & Order is distinguishable in that it effected no material alteration in the parties' respective rights and provided no actual relief on the merits of any of plaintiffs' claims. Defendants simply agreed to take another look at their position and to preserve the status quo while doing so.

Although not a basis for the Court's holding, it is worth noting that in *Buckhannon,* a case involving the state's issuance of cease and desist orders against a board and care home, the state's agreement to stay enforcement of the orders pending resolution of the merits of the case (a challenge to the statute upon which the cease and desist orders were based) did not imbue the plaintiff with prevailing party status. 532 U.S. at 600, 121 S.Ct. 1835. In a Ninth Circuit case, the trial court's agreement, upon joint request by the parties, to hold the case in abeyance pending settlement discussions, did not give the plaintiff prevailing party status. *Perez–Arellano,* 279 F.3d at 792–93.

Similarly, while the Ninth Circuit also has made clear that prevailing party status may not be denied as a matter of law simply because the success obtained by the plaintiff was on a preliminary injunction, *Richard S. v. Department of Developmental Servs. of Calif.,* 317 F.3d 1080, 1088 (9th Cir.2003), the law developed for determination of prevailing party status in such circumstances does not support plaintiffs in this case.

First, the August 21, 2002 Stipulation & Order was not an order granting all or part of a preliminary injunction motion as to any or all of plaintiffs' claims. Second, although it did preserve the status quo pending the defendants' voluntary review, as some preliminary injunctions do, the preliminary injunctions providing the basis for prevailing party status in fee-shifting cases actually granted some or all of the relief the plaintiff sought and involuntarily required the defendant to do some act, or refrain from doing some act. In contrast, here, defendants voluntarily agreed to preserve the status quo for a limited period of time.

In *Watson,* a deputy sheriff who participated in a highly publicized vehicle chase that culminated in the arrest of certain individuals was ordered to prepare a report of the incident upon returning to the sheriff's station. 300 F.3d at 1093. Upon completion of his report, he was placed on administrative leave and eventually terminated. *Id.* He brought a federal court action alleging that his Fourth, Fifth, and Fourteenth Amendment rights had been violated by the county detaining him, compelling him to write his report, and by refusing to allow him to consult with an attorney or his union before writing the report. *Id.* at 1094. He sought money damages and an injunction enjoining the county from using his report in the ongoing administrative termination process. *Id.*

The plaintiff successfully obtained a preliminary injunction prohibiting the defendants from using the report in any manner in plaintiff's administrative appeal concerning his employment termination. *Id.* Nearly two years later, the court granted summary judgment to the defendants on

all but one issue. *Id.* The court found a triable issue relating to the plaintiff's claim for injunctive relief based on an alleged due process claim. *Id.* By that time, however, the parties agreed that the administrative hearing had concluded and the claim for permanent injunctive relief had become moot. *Id.* The district court awarded the plaintiff attorney's fees after determining that he was a prevailing party. *Id.*

The Ninth Circuit affirmed on appeal. The court explained:

> A preliminary injunction issued by a judge carries all the "judicial imprimatur" necessary to satisfy *Buckhannon.* In this case, the County was prohibited from introducing Watson's report at the termination hearing for one reason and for one reason only: because Judge Timlin said so.... And under *Buckhannon,* he was not a mere catalyst of an extra-judicial voluntary change in conduct. There was nothing voluntary about the County's inability to use the report.

> We recognize that there will be occasions when the plaintiff scores an early victory by securing a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against him—a case of winning a battle but losing the war. The plaintiff would not be a prevailing party in that circumstance. But this case is different because Watson's claim for permanent injunctive relief was not decided on the merits. The preliminary injunction was not dissolved for lack of entitlement. Rather, Watson's claim for permanent injunction was rendered moot when his employment termination hearing was over, after the preliminary injunction had done its job.

*Id.* at 1096.

In contrast to the preliminary injunction in *Watson,* the August 21, 2002 Stipulation & Order reflects a voluntary agreement by defendants which ultimately caused no material alteration in the parties' legal relationship. As recited above, at the conclusion of defendants' review, defendants proceeded with litigation, just as if the August 21, 2002 Stipulation & Order had never been entered. And while it appears that defendants may have voluntarily extended their offer to notify plaintiffs before taking further action on the three timber sales, there was nothing in the August 21, 2002 Stipulation & Order requiring them to do so after completing their review. While the preliminary injunction in *Watson* effectively gave the plaintiff the relief he sought, the August 21, 2002 Stipulation & Order simply bought the parties in this action a little extra time.

The same can be said for the plaintiffs in *Williams v. Alioto,* 625 F.2d 845, 847 (9th Cir.1980), a case in which the court held that a plaintiff who obtains a preliminary injunction is a prevailing party for purposes of 42 U.S.C. § 1988, even though the underlying case becomes moot. In that case, the plaintiffs obtained a preliminary injunction prohibiting officials of the San Francisco Police Department from engaging in certain investigative practices aimed at solving certain murders. While the preliminary injunction was on appeal, the murders were solved and the investigation ceased. The appeal was dismissed as moot.

The Ninth Circuit held that having won the preliminary injunction, the plaintiffs were the prevailing parties, notwithstanding the subsequent mootness of their case. *Id.* at 847–48. The court explained that the preliminary injunction prevented the police from continued enforcement of their original guidelines, precisely the relief the plaintiffs sought. *Id.* The plaintiffs succeeded in obtaining a finding by the dis-

trict court that the original guidelines were unconstitutional and the subsequent dismissal of the appeal as moot did not effect that finding. *Id.* Accordingly, the plaintiffs had obtained significant, court-ordered relief that accomplished the main purpose of their lawsuit and as such, were prevailing parties.

Again, in contrast to the relevant law, the August 21, 2002 Stipulation & Order did not award plaintiffs significant relief that accomplished the main purpose of their lawsuit. It simply preserved the status quo for a limited period of time and ultimately expired without causing any material alteration in the parties' legal relationship.

The August 21, 2002 Stipulation & Order fails to provide a sufficient basis upon which plaintiffs may claim prevailing party status.

## B. Sept. 30, 2005 Dismissal Order

■ Plaintiffs argue that because the September 30, 2005 Dismissal Order allowed plaintiffs to seek attorney's fees and costs, it provides enough "sufficient judicial oversight to satisfy an award of attorney's fees." *Barrios,* 277 F.3d at 1134 n. 5. I reject this argument because the fact that the September 30, 2005 Dismissal Order provides for plaintiff to move for an award of fees of costs does not, by itself, meet the requisite standards.

The September 20, 2005 Dismissal Order recites the voluntary decision by defendants to withdraw the contested DN regarding the Pollalie Cooper Project and provides for the dismissal of the case. Nothing in the document shows that plaintiffs obtained actual relief on the merits of any of their claims materially altering the legal relationships between the parties. The only "behavior" change reflected in the September 30, 2005 Dismissal Order is a voluntary one by defendants.

In *Barrios,* the court first concluded that the legally enforceable settlement agreement which required the defendant to pay $10,000 in damages to the plaintiff and further required the defendant to modify its "behavior" by prohibiting it from excluding the plaintiff from on-field coaching, demonstrated actual relief for the plaintiff and a material alteration in the parties' legal relationship. 277 F.3d at 1134. It was only after making that finding that the court, seeking to find the "judicial imprimatur" noted in *Buckhannon,* then noted as follows:

> While dictum in *Buckhannon* suggests that a plaintiff "prevails" only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree, 121 S.Ct. at 1840 n. 7, we are not bound by that dictum, particularly when it runs contrary to this court's holding in *Fischer,* by which we are bound. Moreover, the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs.

*Id.* at 1134 n. 5.

■ *Barrios* does not stand for the proposition that an order of dismissal providing for court retention of the issue of attorney's fees, qualifies the plaintiff to be a prevailing party for purposes of the EAJA or other fee-shifting statutes. Rather, it suggests that when a legally enforceable settlement agreement which in other provisions demonstrates success on the merits effecting a material alteration in the parties' legal relationship by a modification in a defendant's behavior, also contains a provision allowing the court to retain jurisdiction of the attorney's fee issue, then the plaintiff is such a prevailing party.

Because the September 30, 2005 Dismissal Order reflects only a voluntary decision by defendants leading to a stipulated dismissal, and nothing more, the provision allowing plaintiffs to pursue a claim for fees and costs does not make plaintiffs prevailing parties in this case.

■ Finally, in their reply memorandum, plaintiffs suggest that certain language in the September 30, 2005 Dismissal Order was the result of negotiation between the parties and as such, represents a material alteration in the parties' legal relationship. I disagree because the evidence plaintiffs cite does not support their argument.

The relevant language is in paragraph 5 of the September 30, 2005 Dismissal Order and provides, in pertinent part, that "[o]n May 9, 2005, ... the Forest Service withdrew the Decision Notice referenced in paragraph 1, above, for the Pollalie Cooper Project, which, among other things, had authorized the three timber sales challenged in this case." Sept. 30, 2005 Dismissal Order at ¶ 5. In their reply memorandum, plaintiffs accurately note that "[i]n May of 2005, the Forest Service wrote a letter indicating that it had decided to cancel and withdraw the [Pollalie Cooper] EA." Pltfs' Reply at p. 6.

Plaintiffs then contend that in September 2005, when defendants' counsel provided the proposed draft stipulation of dismissal, "the plaintiffs had to insist that the stipulation cover the entire [Pollalie Cooper] EA." *Id.* at p. 7. Plaintiffs state that "[t]he Forest Service attempted to negotiate with plaintiffs a resolution whereby the Forest Service would not withdraw the entire DN and FONSI, but rather only the portions relating to the timber sales as opposed to other activities included in the planning documents." *Id.*

As described by plaintiffs:

The plaintiffs refused to agree to that term because of a new collaborative decision-making process intended to provide new community input on forest management in the area.... The Forest Service first rejected plaintiffs' counteroffer but then later agreed to that significant and additional term.... The correspondence from these negotiations serves to further establish a specific and significant additional change in the legal relationship between the parties. Before the stipulation, the Forest Service maintained that the withdrawal of the DN and FONSI applied only to the timber sales. After negotiation, the Forest Service agreed that the withdrawal applied to all components of the DN and FONSI.

*Id.*

Plaintiffs' memorandum grossly overstates the factual record. The May 9, 2005 letter from Forest Supervisor Gary L. Larsen, referred to in the September 30, 2005 Dismissal Order and by plaintiffs in their memorandum, makes clear that the DN withdrawal applied to the entire "Polallie Cooper Planning Area Environmental Assessment," and encompassed not only the three timber sale but the entire "Polallie Cooper project." Exhibit to Sept. 30, 2005 Dismissal Order.

The correspondence between the parties regarding the draft stipulated dismissal order originally generated by defendants' counsel shows nothing more than an erroneous representation by defendants' counsel based on a miscommunication by his client. Notably, on September 26, 2005, plaintiffs' counsel Christopher Winter wrote to defendants' counsel Steve Odell expressing concern that the draft sent by Odell did not make clear "whether the Forest Service withdrew the Decision Notice with respect to all the projects set forth in the Decisions [sic] Notice or simply just the three timber sales.... The stipulation you provided also directly ref-

erences the three timber sales and not the rest of the projects included in the DN." Exh. H to Sec. Declr. of Chris Winter at p. 2. Winter then asked Odell if it was the Forest Service's intention that the entire DN had been withdrawn and if so, he thought the stipulation needed language to clarify that. *Id.*

In response, Odell wrote to Winter that he checked with the Forest Service and learned that the withdrawal of the DN was intended to apply only to the three timber sales challenged in the litigation. *Id.* In response to that information, Winter then wrote Odell that his information conflicted with the May 9, 2005 Larson letter and that plaintiffs thus wanted more information about the other aspects of the Pollalie Cooper Project before proceeding with the dismissal of the case. *Id.* at p. 1. Finally, on September 27, 2005, Odell wrote Winter that he had again asked the Forest Service for clarification and a definitive answer about the scope of the withdrawal and that he had confirmed that the May 9, 2005 letter "effected a complete withdrawal of the DN in its entirety." *Id.* He attached a revised draft of the stipulation. *Id.* No additional correspondence on this issue is in the record.

The evidence does not support plaintiffs' position that the Forest Service attempted to negotiate anything about the scope of the withdrawal of the DN. The evidence does not reveal any kind of "offer" or "counteroffer" regarding the settlement of any claim. It shows no "rejection" by the Forest Service of any proposal by plaintiffs. Rather, it shows that the first draft of the stipulation contained language that was unsatisfactory to plaintiffs because it did not clearly set out the scope of the withdrawal. It further shows that in response to Winter's request for clarification, Odell received information, later proved incorrect, that the withdrawal was only as to the three timber sales. When Winter

told Odell that this information contradicted the May 9, 2005 letter, Odell sought further clarification from the Forest Service, then obtained a definitive determination regarding the withdrawal which was consistent with plaintiff's interpretation, and circulated a new draft.

Most importantly, the Forest Service's voluntary withdrawal of the entire DN, encompassing the entire Pollalie Cooper Project, was evident in the May 9, 2005 letter and thus, nothing that plaintiff said in the September 2005 correspondence effected a change in the parties' legal relationship. The September 30, 2005 Dismissal Order fails to provide a sufficient basis upon which plaintiffs may claim prevailing party status.

## CONCLUSION

I recommend that plaintiffs' motion for fees (# 87) be denied because I conclude that plaintiffs are not prevailing parties.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due February 23, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due March 9, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 8th day of February, 2006.