FILED

AUG 04 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ECHOSTAR SATELLITE CORPORATION; et al., <br><br>     Plaintiffs - Appellees, <br><br>  v. <br><br> NDS GROUP PLC; et al., <br><br>     Defendants - Appellants. | No. 09-55005 <br><br> D.C. No. 8:03-cv-00950-DOC-JTL <br><br> MEMORANDUM [1] |

| | |
|---|---|
| ECHOSTAR SATELLITE CORPORATION, et al., <br><br>     Plaintiffs - Appellants, <br><br>  v. <br><br> NDS GROUP PLC, et al., <br><br>     Defendants - Appellees. | No. 09-55633 <br><br> D.C. No. 8:03-cv-00950-DOC-JTL |

---

[1] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted April 6, 2010
Pasadena, California

Before: PREGERSON and THOMPSON, Circuit Judges, and GRAHAM,[2] District Judge.

I.      Introduction

EchoStar and NDS appeal the district court's award of attorneys' fees and costs. EchoStar challenges the amount of attorneys' fees and costs awarded to it by the district court. Conversely, NDS challenges the amount of attorneys' fees and costs awarded to it, and the amount of attorneys' fees and costs awarded to EchoStar. The district court awarded attorneys' fees to EchoStar in the amount of $12,972,547.91, plus reasonable costs, and awarded attorneys' fees to NDS in the amount of $8,968,118.90, and no costs. For the reasons that follow, we REVERSE and REMAND with instructions.

II.     Standard of Review

This court reviews a district court's award of attorneys' fees and costs for an abuse of discretion. P.N. v. Seattle Sch. Dist. No. 1, 474 F.3d 1165, 1168 (9th Cir.

---

[2] The Honorable James L. Graham, District Judge for the Southern District of Ohio, sitting by designation.

2007). A district court abuses its discretion if its ruling on a fee motion is based on an inaccurate view of the law or a clearly erroneous finding of fact. Richard S. v. Dep't of Developmental Servs. of Cal., 317 F.3d 1080, 1085-86 (9th Cir. 2003). Thus, any element of legal analysis and statutory interpretation underlying the district court's attorneys' fees decision is reviewed de novo, and factual findings underlying the district court's decision are reviewed for clear error. Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1133 (9th Cir. 2003).

III.   Discussion

It is clear to us that this case, which involved over half a decade of litigation and a four week trial, was about the compromise of EchoStar's satellite television programming security system due to the December 2000 Internet posting and related conduct, not the P1 Test. EchoStar sought actual damages and lost profits totaling approximately $184.8 million, $823 million in disgorgement penalties, and statutory damages of $1 billion. All of EchoStar's claims were based on the allegation that NDS was responsible for the compromise of EchoStar's security system, which caused EchoStar to spend over $94 million to replace all of its access cards with new cards that used a different encryption technology. As stated by EchoStar in support of its motion for attorneys' fees and costs, "Each of EchoStar's claims was premised on the same core set of facts – that NDS engaged

3

in unfair and unlawful business practices through conduct that compromised the integrity of EchoStar's security system." In other posttrial briefing, EchoStar characterized the P1 Test as an "inconsequential fact discussed briefly with few witnesses." In sum, this case was about the massive breach of EchoStar's security system, not the P1 Test.

The P1 Test was an incidental event, unrelated to the December 2000 posting. It was a technical violation of the Communications Act and the California Penal Code, and involved a single, unauthorized interception of EchoStar's signal in a test of a piracy method. As a result of this interception, the jury awarded to EchoStar actual damages of $45.69 (which were trebled pursuant to statute), and $1,500 in statutory damages, and the court awarded to EchoStar $284.94 in restitution and issued a permanent injunction against NDS prohibiting it from again engaging in the illegal conduct found by the jury.

The district court determined that the jury rejected EchoStar's theory that NDS was responsible for the December 2000 Internet posting, and that the violation findings were based on the evidence of the P1 Test. We agree. The jury's express findings, particularly its actual damages award of $45.69, necessarily lead to the conclusion that the jury rejected EchoStar's exclusive theory at trial that NDS was responsible for the December 2000 posting and its aftermath,

4

but found that NDS illegally intercepted EchoStar's programming signal by conducting the P1 Test. EchoStar's arguments to the contrary are unpersuasive.

As a matter of law, we conclude that, for the purpose of awarding attorneys' fees and costs, NDS was the prevailing party in this litigation and that EchoStar fails to meet the legal definition of a prevailing party on any of its claims.

California case law provides that, in the absence of contrary legislative direction, a trial court must determine prevailing party status using a "pragmatic" approach to determine whether a party prevailed "on a practical level." See Donner Mgmt. Co. v. Schaffer, 48 Cal. Rptr. 3d 534, 542-43 (Cal. Ct. App. 2006). Unless a statute provides otherwise, California courts reject a "rigid definition of prevailing party." Id.

Under federal law, a "prevailing party" is one that succeeds " 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). A litigant qualifies as a prevailing party if it has obtained a "court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant.' " Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001) (alterations in original) (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch.

5

Dist., 489 U.S. 782, 792 (1989)). " 'Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*,' " the plaintiff cannot recover fees as a prevailing party. Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1498 (9th Cir. 1994) (quoting Tex. State Teachers Ass'n, 489 U.S. at 792). But "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*." Tex. State Teachers Ass'n, 489 U.S. at 792-93. That is, "the prevailing party inquiry does not turn on the magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992).

Simply stated, EchoStar did not prevail "on a practical level" on the claims under the California Penal Code because those claims were based on the December 2000 Internet posting and were rejected by the jury. Likewise, for similar reasons, EchoStar did not succeed "on any significant issue" or "achieve any of the benefit it sought in bringing suit" under the Communications Act.

Even if we were to hold that EchoStar was a prevailing party on claims under these statutes based upon the P1 Test, we note that, in the four week trial, only two witnesses briefly testified about the P1 Test, and that EchoStar has not

6

even attempted to identify the specific amount of attorneys' fees or costs attributable to proving these violations, which, in any event, would surely be a *de minimis* amount. Although EchoStar did obtain injunctive relief under the California Business and Professions Code, we agree with the district court's determination that, as a matter of law, attorneys' fees are not available under the California Unfair Competition Law.

By the same reasoning, we find that NDS was the prevailing party on EchoStar's claims under the California Penal Code and the Communications Act, which award attorneys' fees to the prevailing party. There is no question that NDS successfully defended against all of EchoStar's claims based on or related to its theory that NDS was responsible for the compromise of EchoStar's satellite television programming security system, including its Digital Millennium Copyright Act, Racketeer Influenced and Corrupt Organizations Act, and Lanham Act claims.[3] Furthermore, insofar as EchoStar obtained a jury finding that NDS

---

[3] The district court properly disallowed NDS's request for attorneys' fees under the Lanham Act but did not attempt to segregate the award of attorney time devoted to the defense of these claims. See Cairns v. Franklin Mint Co., 292 F.3d 1139, 1157-58 (9th Cir. 2002) (suggesting that a court must attempt to apportion attorneys' fees between Lanham Act claims, for which the litigant is not entitled to attorneys' fees, and non-Lanham Act claims, for which the litigant is entitled to attorneys' fees, even if the claims involve a "common core of facts" or are based on "related legal theories"). We note, however, that the Lanham Act claims were denied on a motion for summary judgment that devoted only two pages of briefing to them. Since the operative facts forming the basis of the Lanham Act claims

7

violated the Communications Act and the California Penal Code on the basis of the P1 Test, the overwhelming success of NDS in its defense of EchoStar's lawsuit was trivially mitigated. If found liable for the December 2000 Internet posting and its aftermath, NDS faced the possibility of paying nearly $2 billion in damages. Instead, NDS was held liable for less than $2,000 in damages, and was prohibited from again engaging in conduct whose occurrence it never challenged.

EchoStar requested attorneys' fees in the amount of $15,945,095.81, and NDS requested attorneys' fees in the amount of $23,914,983.74. In its decision awarding attorneys' fees and costs, the district court implicitly found that the rates charged by the attorneys on both sides of the litigation were reasonable and that both parties "presented work of a similar quality." But the district court found that NDS had not shown why it was necessary for it to spend "significantly more hours on this litigation than EchoStar did[.]" The district court has broad discretion in determining the amount of attorneys' fees reasonably required to accomplish a result. Judge Carter is a well-seasoned trial judge who presided throughout this lengthy and complicated litigation. His decision to reduce NDS's attorneys' fees

---

were intertwined with the rest of EchoStar's claims and required minimal legal argument to achieve their dismissal, we see no practical reason to ask the district court to attempt to separate out the attorneys' fees attributable to them. We will instead consider them to fall within the 25% reduction of NDS's fees ordered by the district court.

by 25% was well within his discretion. A 25% reduction from NDS's requested $23,914,983.74 in attorneys' fees equals $17,936,237.80.

IV.  Conclusion

The judgment of the district court is REVERSED, and this matter is REMANDED to the district court with instructions to enter judgment denying EchoStar's request for attorneys' fees and costs, and awarding attorneys' fees to NDS in the amount of $17,936,237.80, and reasonable costs. The costs of this appeal are awarded against EchoStar.