Charles BLACKWELL, Plaintiff(s),

v.

Christopher P. FOLEY, et al., Defendant(s).

No. C 08–01971 MHP.

United States District Court, N.D. California.

July 15, 2010.

---

Paul Leslie Rein, Celia McGuinness, Law Offices of Paul L. Rein, Oakland, CA, Brian Gearinger, Gearinger Law Group, San Francisco, CA, Julie Ostil, Law Offices of Julie A. Ostil, San Ramon, CA, for Plaintiff(s).

Michael Kim Tcheng, Colombatto Sims LLP, Janet M. Brayer, Law Offices of Janet Brayer, San Francisco, CA, for Defendant(s).

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

MARILYN HALL PATEL, District Judge.

This matter having been referred to Magistrate Judge James Larson pursuant to Federal Rule of Civil Procedure 72(b) and Civil Local Rule 72–3 in accordance with 28 U.S.C. section 636(b)(1)(B) and (C) for the purpose of conducting a hearing, determining plaintiff's motion for attorneys' fees and costs to be awarded in this action, and submitting a Report and Recommendation ("R & R") to this court; the Magistrate Judge having conducted a hearing on the motions and having filed his R & R; and the court, having fully reviewed the R & R, having considered the defendants' objections and the response thereto, adopts the R & R in full.

The Magistrate Judge's decision is well-reasoned and explained. It is fully supported by the record. Furthermore, defendants' contention that plaintiff lacks standing is foreclosed by the Consent Decree to which defendants agreed and which was approved by this court and filed on January 14, 2010. That Decree provides that "the parties agree that attorney fees, litigation expenses and costs will be awarded by motion and Order from the Court" and defendant further agreed "to payment in full of those fees, expenses and costs." The Magistrate Judge, correctly and appropriately, in accordance with the agreement of the parties themselves awarded fees, expenses and costs in a reasonable amount. Therefore, the court adopts the R & R and imposes fees, expenses and costs in the total amount of $105,147.00 as calculated and in accordance with the R & R.

Accordingly,

IT IS HEREBY ORDERED that the foregoing Report and Recommendation is

ADOPTED in its entirety, the motion for attorneys' fees, expenses and costs is GRANTED, and in compliance with the Consent Decree **defendants shall pay in full the amount of $105,147.00 within twenty (20) days of the date of this order.**

## REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS (Docket # 37)

JAMES LARSON, United States Magistrate Judge.

Plaintiff's motion for attorney fees and costs was referred by the district court (Hon. Marilyn Hall Patel) for Report and Recommendation under 28 U.S.C. § 636(b). This Court finds the matter suitable for decision without a hearing under Civil Local Rule 7–1(b). The Court carefully considered the moving and opposing pleadings and the record in this case and hereby recommends that Plaintiff's counsel be awarded all fees and costs requested, with minor exceptions as noted. Plaintiff prevailed by obtaining a settlement and Consent Decree; Plaintiff's counsel should be paid at their current hourly rates for work performed; the hours expended were reasonable; Defendant fails to justify any substantial reduction in the fee award.

## I. Introduction and Factual Background

This lawsuit was brought under the Americans With Disabilities Act of 1990 and relevant provisions of California law, to obtain proper access at a public accommodation for physically disabled persons, and to obtain damages for the disabled plaintiff. A motion to obtain an award of attorney fees was filed after unsuccessful efforts by Plaintiff to negotiate settlement as to the amount of Plaintiff's attorney fees, litigation expenses and costs. Plaintiff secured by Consent Decree and Order

all injunctive relief sought by the complaint, and payment of $10,000 damages. (The Consent Decree and Order is Exhibit 1 to Declaration of Paul Rein) (hereinafter "Rein Dec.").

This case evolved from a lunch at the "Citizen Thai" restaurant attended by two of the participants in an "unrelated" lawsuit (*Charles Blackwell v. City and County of San Francisco, 1268 Grant Avenue LLC, Christopher Foley, et al.*, C–07–4629 SBA *("Blackwell I."*))

On November 6, 2007, Charles Blackwell, the legally blind and visually disabled plaintiff in that case, and Barry Atwood, his access consultant in *Blackwell I*, met on the sidewalk adjacent to the Citizen Thai restaurant to examine the location where Mr. Blackwell had fallen and broken his arm on a slippery metal plate embedded in the sidewalk, covering what had been a restaurant's freight elevator, the incident that had given rise to that lawsuit. After their inspection they had lunch inside the Citizen Thai restaurant and Mr. Blackwell encountered access problems on entry and inside the restaurant that affected him as a visually disabled and legally blind person. Plaintiff filed this lawsuit on April 15, 2008 to obtain injunctive relief as to many of the access deficiencies at the restaurant as well as statutory damages.

Plaintiff had attempted to seek this relief first by amending the complaint in *Blackwell I*, but Defendants moved under FRCP Rule 12(f) to strike Plaintiff's first amended complaint because he had not obtained "leave of court" to file an amended complaint and the defense counsel—Mr. Tcheng in that case as in this one—objected to Plaintiff filing such an amendment. Judge Armstrong granted defendant's motion. Defendants in this case then moved to treat these two cases as "related," which motion Judge Armstrong also denied. (See Exhibit 2 to Rein Dec., 10/22/08 order

by Judge Armstrong.) Given their opposition to Plaintiff's attempt to combine the cases by amending his complaint, Defendants are estopped from complaining about this action being filed as a separate lawsuit. See Exhibit 11 and ¶ 5 of Rein Dec.

A cooperative site inspection by attorneys and experts was held on July 23, 2008. The resulting August 20, 2008 draft report of Plaintiff's expert Barry Atwood (Exhibit 10) was used to formulate injunctive relief demands for remediation at the restaurant which were ultimately reduced to those contained in Attachment A to the Consent Decree and Order (Rein Decl. Exhibit 1). Mr. Atwood and his associate, access construction expert Karl Danz, remained as Plaintiff's consultants throughout the case. With their assistance, Plaintiff provided memoranda as to the applicable Title 24 regulations. All are addressed in Attachment A to Exhibit 1, providing the details of the barrier removal obtained. A further "cooperative" site inspection by Mr. Atwood and Plaintiff's co-counsel Brian Gearinger, and by defense counsel and their expert, was required as late as December 4, 2009 as part of the settlement process, to see whether certain work performed by Defendants per an "unreasonable hardship" application to the building department had provided usable access at the restaurant's primary entrance at the front (northwest) corner of the building, and to agree on certain other necessary access work.

After two years of litigation, Plaintiff sought and obtained injunctive relief pursuant to a Consent Decree and Order (Rein Dec. at Exhibit 1) to require Defendants to make these facilities accessible to disabled persons. Plaintiff also sought and obtained damages and now seeks an award of attorney fees, litigation expenses and costs, pursuant to statute and also per

§ 11 of the Consent Decree and Order (Rein Dec. Exhibit 1). Paragraph 11 of the Consent Decree stipulates that "the parties agree that attorney's fees, litigation expenses and costs *will be awarded* by motion and Order from the Court." [Emphasis added.]

## II. Procedure for Plaintiff's Attorney Fees, Litigation Expenses and Costs

Per Attachment A to Exhibit 1 of Rein Declaration, the Consent Decree and Order signed by the Court and entered on the court record on January 14, 2010, Defendants agreed to make the subject restaurant accessible to disabled persons, and to do so on an agreed timetable. (Exhibit 1, ¶¶ 8 and 9.) The Consent Decree and Order protected the public interest, per ADA §§ 308 and 505, and California Code of Civil Procedure § 1021.5. Plaintiff also obtained $10,000 damages, the same amount recovered in *Barrios v. California Interscholastic Federation, et al.*, 277 F.3d 1128 (9th Cir.2002). Exhibit 1 establishes Plaintiff as the prevailing party for obtaining injunctive relief and damages, and entitled to statutory attorney fees. *Id.* Further, Exhibit 1, at ¶ 11, references Plaintiff's right to and procedure for obtaining his attorney fees, litigation expenses and costs:

11. The parties have reached an agreement regarding Plaintiff's claims for damages attorney fees, litigation expenses and costs. Defendants agree to pay $10,000 inclusive of all damages being paid to "Paul L. Rein in trust for Charles Blackwell," simultaneously upon receipt of a copy of this Consent Decree fully executed by plaintiff and his attorneys. Further, Defendants agree to file a fully executed Consent Decree within 7 days of receipt of the Consent Decree executed by Plaintiff and his attorneys. Finally, the parties agree that attorney

fees, litigation expenses and costs will be awarded by motion and Order from the Court. Such motion will be filed within 60 days of entry of this Consent Decree by the Court, unless parties are able to reach settlement of such issues within 40 days of said entry. Defendants agree to payment in full of attorneys' fees, litigation expenses and costs within 20 days after the Court's Order thereon.

In *Barrios, supra,* a court-enforceable agreement for injunctive relief and payment of $10,000 damages were the specific bases under which the plaintiff in that case was found to be the prevailing party as a matter of law.

## III. Statutory Bases for Award of Attorney Fees

### A. Section 505 of the ADA

This statute provides for an award of attorney fees, litigation expenses (including expert consultant fees) and costs, for obtaining the injunctive relief (per ADA § 308, the only relief available) under ADA Title III. (See detailed D.O.J. standards 28 C.F.R. § 36.505.) Alternatively, California Civil Code § 55 provides attorney fees and costs for obtaining injunctive relief, and § 54.3 provides fees for recovery of damages, both to enforce the "full and equal access" guaranteed to disabled persons by § 54.1.

### B. California Law

Alternatively, fees are available pursuant to Code of Civil Procedure § 1021.5 for obtaining a public interest result:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary of nonpecuniary, has been conferred on the general public or a large class of persons …

## IV. Defendant Christopher Foley opposes the attorney fee motion on a number of bases, including that Plaintiff lacks standing.

■ Defendant Christopher Foley opposes Plaintiff's motion for fees. He argues that Plaintiff lacks standing because he had not actually visited the restaurant before filing the complaint in *Blackwell v. San Francisco ("Blackwell I")*, asking this Court to consider only Plaintiff's complaint in *Blackwell I,* in deciding whether Plaintiff has standing for an award of fees in this lawsuit, *"Blackwell II,"* despite the fact that Judge Armstrong expressly found the two cases were not related. That case concerned his slip on a sidewalk freight elevator access cover and resulting injury. Plaintiff tried to file a First Amended Complaint and to relate the two cases, but Defendants fought it, persuading Judge Armstrong to strike the Title II claims from Plaintiff's complaint. Plaintiff then filed this case, and the cases proceeded separately. (Ex. F to Pltf. Reply brief)

With respect to this case ("*Blackwell II*"), Defendant argues that Plaintiff only visited the restaurant as a customer because he was already there with his access consultant to evaluate the allegedly unsafe sidewalk condition. Defendant argues that "his goal was not to access a business establishment and obtain its goods and services, rather plaintiff's goal was to encounter ADA violations." (Opposition at 11:9–10). Defendant cites nothing in either the statute or case law that requires a showing of such an intent by a plaintiff. Plaintiff concedes that motive might have been relevant had this case proceeded to trial, but the case settled, with Defendants agreeing to pay Plaintiff damages of $10,000, and to undertake corrective work to provide access as provided in ¶ 8 of the Consent Decree (Exhibit 1 to Pltf. Reply), including Attachment A, the list of access

deficiencies to be remedied, and ¶ 9, "Timing of Injunctive Relief."

Defendant also challenges Plaintiff's standing, since he is visually impaired, not mobility-impaired. This argument is spurious. Plaintiff's complaint states that he is visually-impaired and cites ADA violations at the Defendants' restaurant that interfere with access for visually-impaired patrons, as well as those that impair access for mobility-impaired patrons. (See Plaintiff's Compliant at ¶ 12 and 14).

## V. Plaintiff Is the prevailing party as a matter of law under both the ADA and California law:

### (A) Obtaining an enforceable agreement establishes Plaintiff as the prevailing party;

### (B) Obtaining a Settlement Agreement to pay damages requires attorney fees payment per California Civil Code § 54.3

■ Plaintiff's litigation obtained a court-enforceable Consent Decree and Order, compelling defendant to provide accessible facilities at the Citizen Thai Restaurant, and to pay $10,000 in statutory civil rights damages. As pled in the Complaint and argued in Plaintiff's motion, attorney fees are alternatively available to the prevailing party on any of three bases:

(1) Obtaining a result in the public interest per California Code of Civil Procedure § 1021.5; Maximizing the rights of disabled persons is designated as an important public interest by Government Code § 19230:

> The Legislature hereby declares that (a) It is the policy of this State to encourage and enable individual with a disability to participate fully in the social and economic life of the State and to engage in remunerative employment.

(2) Obtaining the objectives of the lawsuit's claim for injunctive relief (per § 308 of the ADA, Cal. Civil Code § 55, and Cal. Health & Safety Code § 19953) by obtaining accessible public facilities at this restaurant;

(3) Obtaining statutory damages per Civil Code § 54.3, for violation of § 54.1's guarantee of "full and equal access."

■■■■■■■■■ damages is an independent basis for an award of statutory attorney fees (Cf. *Hankins v. El Torito Restaurants, Inc., et al.* (1998) 63 Cal.App.4th 510, 74 Cal.Rptr.2d 684; *Donald v. Café Royale* (1990) 218 Cal.App.3d 168, 266 Cal. Rptr. 804).

In its affirmation of *Hankins v. El Torito, supra,* the court of appeal upheld a $403,000 award of attorney fees, litigation expenses and costs based on obtaining an award of $80,000 damages, per Civil Code § 54.3.

These standards apply in federal court actions which include enforcement of California laws. (*Barrios, supra.*) *Barrios* was followed in *Richard S. v. Dept. of Developmental Services,* 317 F.3d 1080 (9th Cir.2003), holding that a court-enforceable settlement agreement providing either payment of damages or enforceable injunctive relief satisfied the requirements of *Buckhannon Board & Care Home, Inc., et al. v. West Virginia Dept. of Health & Human Resources, et al.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). As outlined in *Fischer v. SJB–P.D., Inc., et al.,* 214 F.3d 1115 (9th Cir.2000), an ADA Title III access case, and reaffirmed in *Barrios, supra,* the test is, "Whether the plaintiff has obtained an enforceable judgment or settlement that requires the defendant to do something he otherwise would not have to do." (*Id.* at p. 1118) The "reasonable" value of these fees must be awarded per the requirements of ADA § 505, California Civil Code §§ 54.3 and 55, and California Code of Civil Procedure § 1021.5.

Defendant attempts to convince the Court that Plaintiff should not be awarded fees after rejecting an offer at mediation that was "roughly equal" to what was finally agreed to by the parties. (Supp. Rein Dec. at Exs. 13 and 14; Ex. A to Opposition) Defendant claims that the Court should deny or substantially reduce any post-mediation fees to Plaintiff. Plaintiff argues that, to the contrary, it was Defendant who prolonged post-mediation litigation by reneging on the settlement terms, opposing Plaintiff's motion to enforce the settlement agreement, and causing six additional months of litigation. The mediation took place in April 2009, but the parties only agreed to a settlement in August. Plaintiff filed his motion to enforce the settlement in November, which was never heard by the trial court, apparently because the parties continued to negotiate and ultimately entered into a stipulated Consent Decree in January 2010. Whether or not the terms of the final settlement were "roughly equal" to the terms of the earlier settlement, would not justify denying Plaintiff's fees for the period when the parties were negotiating after the initial settlement fell apart. The Court will not attempt to assign blame for the failure of the initial settlement to stick.

## VI. All Defendants, landlords and tenants, are jointly and severally liable for Plaintiff's attorney fees, litigation expenses and costs

■ Regardless of any indemnification agreement among themselves, all Defendants signed the Consent Decree; and all are jointly and severally responsible for Plaintiff's attorney fees. Landlord and tenant have joint and several responsibility to Plaintiff for violation of the ADA. *Botosan v. McNally Realty, et al.*, 216 F.3d 827, 832 (9th Cir.2000), cited by the court in *Kosloff v. Washington Square Assoc.*, 2007 WL 2023497 (N.D.Cal.2007) held that

defendants were "joint and severally liable for all compensation to plaintiff under the ADA including federally authorized attorney's fees."

■ Under both federal and California law, liability among defendants for a successful plaintiff's attorney fees is generally joint and several. *Turner v. District of Columbia Bd. of Elections & Ethics*, 354 F.3d 890 (D.C.Cir.2004); *California Trout, Inc. v. Superior Court*, 218 Cal.App.3d 187, 212, 266 Cal.Rptr. 788 (1990); *Corder v. Gates*, 947 F.2d 374, 383 (9th Cir.1991). It has also been held proper for a court to award fees against one defendant for time spent litigating against another. *Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal.App.3d 961, 976, 259 Cal. Rptr. 599 (1989).

## VII. The Purposes of the Fee Statutes

### A. Requirement of an Award of Substantial Attorney Fees

Per statutory provisions by the United States Congress and the California Legislature to ensure that there are attorneys willing to perform the important function of securing the rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," it is necessary to provide substantial compensation for this work.

Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not independently enforce the ADA, and that enforcement was left primarily to private lawsuits. (Attorney General's Opinion, No. 93–203.) Previously California Attorney General John Van de Kamp had supported private enforcement lawsuits, and filed amicus curiae

briefs on behalf of the plaintiff in both *Donald v. Sacramento Valley Bank*, 209 Cal.App.3d 1183, 260 Cal.Rptr. 49 (1989) and *Donald v. Café Royale, supra*, stressing the limited resources of its Civil Rights Division and supporting the need for private lawsuits to enforce disabled access. Despite efforts made over the last 30 years to encourage attorneys to handle California law disability rights cases which seek public interest injunctive relief (and, since 1990, ADA cases), relatively few competent private attorneys have been willing to do so. Instead, much press attention has been paid to the few attorneys who may have "abused" use of the "ADA" statutes.

**B. The fee award must be sufficient to encourage competent counsel to undertake difficult public interest cases**

The "fundamental objective" of attorney fee statutes is "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees ... to those who successfully bring such suits...." *Woodland Hills Residents Ass'n., Inc. v. City Council*, 23 Cal.3d 917, 933, 154 Cal. Rptr. 503, 593 P.2d 200 (1979) (Emphasis added). To accomplish this, the award must be large enough "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino*, 155 Cal.App.3d 738, 755, 202 Cal. Rptr. 423 (1984). As the court decided in *Woodland Hills:*

> "The Doctrine rests upon a recognition that privately initiated lawsuits are often essential to the effectuation of fundamental public policies ... and that, without some mechanism authorizing the award of attorney's fees, private actions to enforce such important public policies would as a practical matter frequently be infeasible."

Defendant also argues that Plaintiff in this case obtained "minimal" relief, not worthy of a substantial fee award. Defendant submits inadmissible irrelevant photographs of the restaurant prior to remediation, and a recital of a purported building inspector's grant of a dispensation from the disabled access laws due to excessive hardship. Neither of these is relevant to claims under either the ADA or California law. Plaintiff responds that limiting fees by the amount of damages is especially inappropriate where, as here, the amount of the fees was driven up by the defendants' resistance to the lawsuit. *Lipsett v. Blanco*, 975 F.2d 934, at 939 (1st Cir.1992). The reason for the fee-shifting provisions of both the ADA and California law is to motivate plaintiffs' attorneys to advocate for full and equal access for the disabled to public accommodations like Defendant's restaurant.

**C. The amount of damages recovered cannot serve as a cap or limitation on fees, especially in cases involving injunctive relief**

The primary purpose of a lawsuit to enforce ADA Title III is to obtain injunctive relief, the only available ADA remedy. While attorney fees are alternatively available for obtaining plaintiffs' damages, there is no requirement of any "relationship" between the amount of damages and the attorney fees necessarily expended to obtain the injunctive relief of an accessible restaurant as well as damages to the plaintiff. (Cf. 9th Circuit opinion in *Barrios, supra*, rejecting defendants' argument that recovery of $10,000 damages was too low to justify award of full attorney fees.)

Defendant argues that Plaintiff should not receive fees and costs totaling more than $100,000 when he received damages of only $10,000, citing *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir.1994). However, in the *McGinnis*

case, the plaintiff received only damages, and no injunctive relief.

Indeed, in lawsuits under the ADA itself (unlike the California Civil Rights statutes), only injunctive relief is available and no damages are available. "ADA" Title III damages are always zero; yet Congress specifically offered statutory attorney fees as incentive to encourage attorneys to handle these important cases. (See ADA § 505.) Similarly, damages are not considered the primary purpose of California laws protecting physically disabled persons. Civil Code § 55 and Health & Safety Code § 19953 each require payment of plaintiff's attorney fees when a lawsuit achieves injunctive relief to provide "full and equal access" to the disabled, regardless of whether any damages are paid. Recovery of $10,000 damages, is an additional and significant civil rights victory, especially when minimum statutory damages per Civil Code § 54.3 are only $1,000, and, alternatively, $4,000 per Civil Code § 52.

If fees were limited by the amount of damages, no matter how meritorious the clients' claims might be, attorneys simply would not take these cases. This would be contrary to legislative determinations that statutory attorney fees should encourage attorneys to represent disabled persons. Moreover, courts have recognized that limiting fee awards by the amount of damages recovered would be especially inappropriate where the amount of fees was driven up by the defendants' resistance to the lawsuit. (Cf. *Lipsett v. Blanco*, 975 F.2d 934, at 939 (1st Cir.1992).) The fact that Defendants battled over the terms of the Consent Decree is, if anything, an indication that they didn't consider the terms to be "minimal." Access for people with disabilities is not "minimal"; a facility is either accessible or it isn't. Defendant's restaurant was inaccessible prior to Plain-tiff's lawsuit and it was accessible afterwards. End of story.

## VIII. Plaintiff should be awarded all attorney fees, litigation expenses and costs

■ Plaintiff's counsel's work, done in the public interest on a contingent fee "risk" basis, should be fully compensated. (Plaintiff's counsel Paul Rein has also advanced over $13,146 in litigation expenses and costs attributable solely to this case.) (Rein Dec., ¶ 11.) "Where plaintiff has obtained *'excellent results,' his or her attorney should recover a fully compensatory fee." Wallace v. Consumers Co-op of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, at 850, 216 Cal.Rptr. 649, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Important principles for setting attorney fees for a public interest oriented plaintiff were set out in *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 273, 237 Cal.Rptr. 269:

> The issue posed is whether plaintiffs are entitled to all hours reasonably spent in pursuit of this litigation ... In *Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 [186 Cal.Rptr. 754, 652 P.2d 985], the Supreme Court indicated "that, absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent ..." It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right.

All attorneys in this case represent disabled persons in public interest access cases on a contingent fee basis. Attorney fees are awarded, through judgment or settlement, only when the plaintiff prevails, and only on an hourly fee basis; no external funding is received.

Defendant argues that attorney Paul Rein should receive $435 per hour, the rate that he was billing at the time the lawsuit was underway, as opposed to his current rate of $495 per hour, and that all other counsel should be compensated at $250 per hour. Plaintiff submits massive evidence in rebuttal, including supporting declarations and citations to apposite cases. (See Declarations of Sid Wolinsky, Sid Cohen, and Brian Gearinger in this case, and of Richard Pearl at Docket # 191 in the case of *National Federation of the Blind v. Target Corporation*, C–06–1802 MHP, 2009 WL 2390261 (N.D.Cal.2009); Rein Decl. Exs. 8 and 9, *NFB* order at p. 3).

Plaintiff's counsel billed for this case at the following hourly rates:

- Paul Rein: $495
- Brian Gearinger $425
- Julie Ostill $395
- Celia McGuinness $395
- Stephen LaRoe $275
- Ann Winterman $225
- Mykola Kovalenko $175

Plaintiff's requested rates are below market rates for attorneys with equal experience, and are supported by declarations of other attorneys, including Sid Wolinsky, whose own rates have periodically been increased by the courts. (Wolinsky Decl. ¶ 1–13)

Furthermore, Plaintiff's counsel are entitled to receive their *current* hourly rates as compensation for the delay in payment. *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ("an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise is within the contemplation of the statute.") (internal citation omitted) In that case, the fees were paid several years after services were rendered and the Court found that receiving fees years later that were calculated on the hourly rates in effect at the time the services were rendered would not be equivalent to receiving fees paid reasonably promptly as the legal services were performed, as would be the case with private billings. Defense counsel probably has not waited until now to be paid, but received their fees as they went along, from 2008 to the present.

Defendant attempts to justify paying Plaintiff's attorneys their former rates by citing four easily distinguishable cases. Two of them are Eastern District cases involving unknown attorneys whose fee rates were "capped" at $250 per hour, until this Eastern District practice was ended by the Ninth Circuit in *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

Defendant also attempts to attack Mr. Rein's hourly rate of $495 per hour, asking this Court to reject the declaration of Richard Pearl filed in the *National Federation of the Blind* case, on the grounds that it was rejected by the court in *Mannick v. Kaiser Foundation Health Plan, Inc., et al.*, 2007 WL 2892647 (N.D.Cal. 2007). Defendant overlooks that Mr. Rein's fees were approved at $435 per hour; it was *Mr. Gwilliam's* fees that were reduced by the court, from $650 per hour, to the same rate as Mr. Rein. Mr. Gwilliam is not on this case. In the *National Federation of the Blind* case, Judge Patel; specifically approved the rates of all attorneys and paralegals, in reliance on the same Pearl declaration. (*NFB* at p. *3)

Defendant attempts to persuade this Court to apply fee awards by out of district courts involving attorneys not appearing in this lawsuit. The Court finds that Plaintiff proffers more persuasive examples from within the Northern District, with respect to attorneys appearing in this lawsuit:

Other judges in the Northern District have also awarded Rein most of the hours claimed at his current rates at the time of the fee award: *George v. BART,* 2007 WL 2778784 (N.D.Cal.2007) (Judge Wilken) (awarding Rein his then current rate of $435 per hour and 148.689 of the 157.1 hours requested for work from 2003–2007); *Mannick v. Kaiser,* (Judge Hamilton) (awarding Rein $435 per hour for work from 2003–2007). In fact, one case is an ADA case against a restaurant, also litigated by Paul Rein, counsel for Plaintiff in this case: *Chavez v. Chevy's* (Judge Henderson) (Rein Supp. Decl. At Ex. 15). Plaintiff brought a fee motion after settlement by a consent decree for $25,000 damages and specified injunctive relief. Rein was awarded his requested rate for 2001–2003, $395 per hour, and 98% of requested fees and costs. This Court notes that in that case Judge Henderson rejected defense challenges to the hours expended: "Defendants would have the Court penalize Mr. Rein for litigating the case in a manner that afforded plaintiff quality representation, and the Court will not do so." (Order at p. 4, 1.1–3) Judge Henderson also rejected defense challenges in that case which were similar to those in this case: that plaintiff's counsel charged for clerical tasks—"It is lead counsel's responsibility to oversee his staff and ensure that critical, even if mundane steps are completed properly." (*Id.* at 1.14–15) Likewise Judge Henderson rejected criticism of "excessive meetings" between co-counsel, finding "they were within the scope of work reasonably to be expected in litigation of this nature and magnitude." (*Id.* at 1.21–22). Regarding criticism of "excessive" time being billed, the court "finds that the time billed in this case is perfectly reasonable, and that spending much less time likely would have jeopardized the quality of counsel's representation." (*Id.* at p. 5, 1.1–3) The court granted Rein's then-current rate of $395 per hour and even granted a multiplier, which counsel is not requesting in this case.

Defendant also attempts to nitpick at Plaintiff's fees as having been more paralegal or clerical than legal, in some instances, or representing too many conferences among Plaintiff's counsel, or having been done by experienced counsel rather than more junior associates. Plaintiff argues that the fee requests reflects "billing judgment concerns that should result in a lower award." In fact, Defendant has the burden to rebut the fee request and fails to demonstrate any substantial indication that the hours billed were "excessive, redundant, or otherwise unnecessary ..." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Plaintiff notes that Defendants criticize Plaintiff for using two attorneys, when Defendant also had two attorneys at most stages of this case. Defendant Christopher Foley is represented by Michael T. Tcheng, and Defendant Thai Speed, dba Citizen Thai, is represented by attorney Janet Brayer, whose clients are not participating directly in this opposition to Plaintiff's motion for fees.

In *Chabner v. United of Omaha Life Ins. Co.,* C–95–0447 MHP, 1999 WL 33227443 (N.D.Cal.1999) Judge Patel made comments relevant to Plaintiff's use here of two attorneys and an expert during crucial settlement negotiations:

"To demonstrate the alleged excessiveness of plaintiff's billing strategy, defendant notes that three attorneys billed time for attending the two oral arguments on plaintiff's motion for summary judgment. The court finds it reasonable that the lead attorneys chose to be present during two pivotal points in this complex litigation. Defendant fails to explain with specificity how the remaining entries are duplicative or multiple ... Common sense dictates that a single

task can be broken down over several discrete time periods and that a number of people might contribute to one end product."

*Id.* at p. *4.

Similarly, in *NFB, supra,* Judge Patel rejected defendants' assertion

"that preparation of an expert witness by two attorneys constituted unnecessarily duplicative billing. In fact, it is often more efficient for lawyers with complementary skill sets to cooperate in performing a task. The use of two attorneys for such a task is hardly extravagant."

*Id.,* at p. *5.

Defense counsel Mr. Tcheng, with no particular expertise beyond his own Bar card, attempts to analyze the time sheets of Plaintiff's counsel, objecting to certain percentages of time as excessively spent on certain tasks. As the court did in *Chabner,* this Court rejects this uninformed second-guessing and finds, following a review of Plaintiff's attorneys' time records, that the hours expended by Plaintiff's attorneys were reasonable.

Even if more than one attorney worked on a task, that does not show the hours were excessive. In fact, if anything, an attorney working on contingency is less likely to expend unnecessary hours because the payoff is too uncertain. *Moreno* at 1113.

This Court declines to accept the holding in *MacDougal v. Catalyst Nightclub,* 58 F.Supp.2d 1101 (N.D.Cal.1999), which is inapposite to an ADA access case. Attorneys in these cases do not vary their hourly fees according to task—these are hourly statutory fees to be paid by the defendant. *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1548 (9th Cir.1992) (rejecting contention that court must award different fees for different tasks); *Gates v. Rowland,* 39 F.3d 1439, 1451 (9th Cir.1994) (Same). See also *NFB* at *5, where Judge

Patel rejected defendants' opposition to plaintiffs' counsel charging full rates "for travel time and time used to perform clerical tasks. The Ninth Circuit has established that travel time and clerical tasks are reasonably compensated at normal hourly rates if such is the custom in the relevant legal market." (Citing *Davis,* 976 F.2d at 1543). Four years after the *MacDougal* case, Judge Jenkins awarded attorney Rein almost all of the requested fees and costs in *Shapiro v. 3030 Bridgeway,* Civil Case No. C–00–4410 MJJ; (Ex. 16 to Rein Supp. Declaration, adopting Report & Recommendation of Magistrate Judge Spero).

Plaintiff concedes that attorney LaRoe's 1.8 hours at $275 per hour should be deducted from the fee award, per Supplemental Gearinger Declaration.

## IX. Plaintiff is entitled to compensation for work on this fee motion

■ Plaintiff is also entitled to attorney fees for preparing this fee motion. In *Ketchum v. Moses,* 24 Cal.4th 1122, at 1133–1134, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001), the California Supreme Court reaffirmed its *Serrano* holding that fee awards should be fully compensatory, "including those relating solely to the fee":

We held in *Serrano IV* that, absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee ... We explained that the purpose behind statutory fee authorizations—i.e., encouraging attorneys to act as private attorneys general and to vindicate important rights affecting the public interest—"will often be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim."

## X. Bases for Plaintiff's Attorney Fee Hourly Rates

### A. Standards for setting an attorney's reasonable hourly rate are met by Plaintiff's attorneys' Declarations, supporting Declarations, and prior court awards

■ In determining Plaintiff's counsel's reasonable hourly rate, the Court must take into account the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Morales v. City of San Rafael*, 96 F.3d 359, 363 FN. 8 (9th Cir.1996) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975) cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976)).

As stated by the Court in *Lindy Bros. Builders v. American Radiator*, 540 F.2d 102, 117 (3rd Cir.1976): "As a first principle, the court must recognize that a consideration of 'quality' inheres in the 'lodestar' award: counsel who possess or who are reputed to possess more experience, knowledge and legal talent generally command hourly rates superior to those who are less endowed."

The Ninth Circuit reached a similar conclusion:

Plaintiff's attorneys are entitled to be compensated at rates that reflect the reasonable market value of their services in the community. (*Serrano v. Unruh,* (1982) 32 Cal.3d at 643, 186 Cal. Rptr. 754, 652 P.2d 985) Plaintiffs' attorneys' rates here are based on what attorneys with comparable skill and experience charge.

Affidavits of the plaintiff['s] attorneys and other attorneys regarding prevailing fees in the community and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorneys are satisfactory evidence of the prevailing market rate.

*United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Under the Lodestar method, Plaintiff's attorneys are entitled to be compensated for "all hours reasonably spent on the matter." *Serrano IV, supra,* 32 Cal.3d at 635, 186 Cal.Rptr. 754, 652 P.2d 985; *Sundance v. Municipal Court,* 192 Cal.App.3d 268, 273–274, 237 Cal.Rptr. 269 (1987). An attorney's sworn testimony that, in fact, it took the time claimed "... is evidence of considerable weight on the issue of the time required ..." *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988). To deny compensation, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Ibid.* Unless Plaintiff's attorneys are reasonably compensated for all their time, the purposes of the private Attorney General statutes will not be met. Plaintiff's attorneys and paralegals have supported their fee requests with sworn declarations and copies of all declarants' time sheets.

### B. The hourly rates requested by Plaintiffs' attorneys are reasonable based on their education, demonstrated skills, and specialized experience

■ Plaintiff's attorneys' experience, skill and persistence in this case support

an award of full fees, as shown by their respective individual declarations. Plaintiff's counsel, Paul L. Rein, a 1968 honors graduate of Boalt Hall School of Law, has more than 41 years litigation experience, much of it concentrated in the field of complex disabled access litigation, about which he has published numerous articles. He has represented disabled persons for 35 years. Paul Rein's successful handling of leading California published cases establishing the right to accomplish access changes through private lawsuits under California law, such as *Hankins, supra, Donald v. Sacramento Valley Bank, supra,* and *Donald v. Café Royale, supra,* are relevant toward establishing Mr. Rein's hourly rate and expertise in this field of law. Also relevant are the two decisions in *Walker v. Carnival Cruise Lines, Inc.,* 63 F.Supp.2d 1083 (N.D.Cal.1999) and 107 F.Supp.2d 1135 (N.D.Cal.2000), and the published permanent injunction order by Judge Margaret M. Morrow in *Huezo v. Los Angeles Community College District (Los Angeles Pierce College),* 672 F.Supp.2d 1045 (C.D.Cal.2008).

Brian Gearinger, who has 20 years litigation experience, including working for the San Francisco City Attorney and the large defense firm of Hancock, Rothert & Bunshoft LLP before starting his plaintiffs' disability rights practice in 2004, had his previous rate of $375 per hour approved in 2007 in a binding arbitration on prevailing party attorney fees. (See Gearinger Dec., ¶¶ 2 and 3.)

Julie Ostil, a 2000 Boalt Hall honors graduate, was elected President of the Boalt Hall Women's Association. She has more than nine years experience representing disabled persons with varying disabilities. Ms. Ostil, formerly staff attorney for the Deaf Woman's Legal Project at the Law Center for Families in Oakland, representing persons with mobility, hearing, and visual disabilities, joined the Rein Law Office in 2003, and opened her own office in 2008. In the last seven years she was lead attorney or co-counsel in multiple successful disabled access cases, as noted in her accompanying declaration. Ms. Ostil's previous rates were approved in *George, et al. v. BART* (N.D.Cal.) C00-2206 CW, 2007 WL 2778784 (9/21/07 Order), and *Mannick v. Kaiser* (N.D.Cal.) (9/28/07 Order) (2007 WL 2892647), and *Huezo v. Los Angeles Community College District, supra.* (See Ostil Dec., ¶¶ 3–5, 9; Rein Dec., ¶¶ 48–49)

Celia McGuinness, an advocate for her own disabled daughter for the past ten years, also has 18 years litigation experience, after being named Outstanding Oral Advocate in the 1991 California State Moot Court Championships. Ms. McGuinness' hourly rate is supported by her declaration and by the Declaration of attorney Sidney Cohen, a 1966 Boalt Hall graduate and a civil rights attorney with 42 years litigation experience in the Bay Area.

Attorney Ann Winterman, a 2002 graduate of Boalt Hall who worked on this case in 2007–2008, has filed a declaration which requests only her 2007–2008 hourly rate of $225/hr. (See also Rein Dec., ¶ 50.)

Senior Paralegal Aaron Clefton has supported his rate and hours with a detailed declaration verifying his Phi Beta Kappa undergraduate from the University of Washington in 2004, his unusual and extensive public interest work in Seattle and South Africa, his interrupted law school education; and his extensive duties for more than five years as a senior paralegal and law clerk in the Rein disability rights office. His declaration also references comparative rate surveys from recent Northern District fee orders. (Clefton Dec., ¶¶ 3–5, 10, 11.)

Paralegal Katherine Castro has not prepared a declaration, although she has worked as a legal secretary and paralegal

for more than 30 years, and seeks only a baseline rate of $100/hr. for her limited (three hours) work on this case.

### C. Plaintiffs' attorneys' hourly rates are supported by declarations by other leading civil rights attorneys as to Northern District market rates

The accompanying declaration of attorney Sid Wolinsky, Chief of Litigation for the respected public interest law firm, Disability Rights Advocates, states that Paul Rein's requested hourly rate of $495/hr. is fully consistent with market rates in the Bay Area for attorneys of commensurate experience and expertise. Mr. Wolinsky states his familiarity with market rates, his personal knowledge of Paul Rein's work and Mr. Rein's "important work in the difficult area of disability rights . . ." (Wolinsky Dec., ¶¶ 10–13.)

Two other Northern California civil rights and disability rights attorneys filed declarations in *Mannick v. Kaiser, et al.* (N.D.Cal.) C03–5905 PJH, 2007 WL 2892647: declarations by John Burris (Rein Decl. at Exhibit 5), and by Christopher Whelan (*Id.*, Exhibit 6). They provide their respective backgrounds and their opinions that the proper market rate for Paul Rein in the Northern District was at least $435/hr. for 2003 to 2007.

Attorney Sid Cohen, who graduated from Boalt Hall in 1966, and has handled disabled access cases for 20 years, filed a declaration supporting Julie Ostil's current rate of $395 per hour. Ms. Ostil's rate is also supported by a declaration by attorney Patricia Barbosa, who has represented disabled persons for the last 18 of her 23 years as a lawyer, including enforcing disability rights during her years as a California Deputy Attorney General in the Civil Rights Enforcement Unit. (See accompanying declarations by Sid Cohen and Patricia Barbosa.)

### D. Plaintiff's attorneys' requested rates are supported by court approvals of previous rates for Plaintiff's attorneys

Six years ago Judge Claudia Wilken, in a 2004 attorney fees Order in *George, et al. v. BART* (N.D.Cal.) C00–2206 CW (p. 14, l.13–24), stated:

> Paul Rein is a 1968 graduate of Boalt Hall School of Law at the University of California at Berkeley with thirty-five years of experience, much of it concentrated in complex disabled access litigation. He has published numerous articles in the disabled access field, has lectured to many attorneys and law students and has handled successful litigation which required building modifications to provide access for disabled persons to a variety of facilities including banks, hotels, airlines, theaters, universities, gasoline service stations, supermarkets, restaurants, hospitals and offices. His $395 per hour rate was also approved by judges of this court in Chavez and Shapiro.

In an order of September 21, 2007, Judge Wilken set Paul Rein's rate for work done in 2005, 2006 and 2007, at $435 per hour, and attorney Julie Ostil's rate at $275 per hour for the same years. (Sept. 21, 2007 Order in *George, et al. v. BART* (N.D.Cal.) Case No. C00–2206 CW, 2007 WL 2778784.) These rates were also approved by Judge Phyllis Hamilton after another contested attorney fees motion in *Mannick v. Kaiser Foundation Health Plan, Inc., et al.* (N.D.Cal.) (2007 WL 2892647), Order of September 28, 2007, for work done from 2003 to 2006. These same rates for Mr. Rein and Ms. Ostil were also approved by Judge Martin Jenkins in his March 24, 2008 Order adopting the recommendation of Magistrate Judge Edward Chen in *Saldana–Neily v. Taco Bell of America, et al.* (N.D.Cal.) Case No. C04–

4571 MJJ, 2008 WL 793872, for work done from 2004–2007.

The current requested rate for Julie Ostil, $395 per hour, is also supported by Northern District market rate standards. Judge Claudia Wilken, in the September 21, 2007 BART decision, supra, and Judge Phyllis Hamilton in the September 28, 2007 Kaiser decision, infra, both approved of Ms. Ostil's then hourly rate of $275 per hour for work performed from 2004 through 2007. Her rate was set at $300 per hour in the November 17, 2008 Order in the Central District by Judge Margaret Morrow, for 2006–2008 work in *Huezo v. Los Angeles Community College District (Los Angeles Pierce College)* (C.D.Cal.), 672 F.Supp.2d 1045, a case won by summary judgment and a later motion for a permanent injunction, obtaining major college campus access improvements.

### E. Plaintiff's attorneys' requested rates are below the Northern District market rates established by the court in *National Federation of the Blind v. Target Corporation*, 2009 WL 2390261

In *National Federation of the Blind v. Target Corporation*, 2009 WL 2390261 ("*NFB* "), Judge Patel approved the hourly rates requested by plaintiffs' counsel. The court set the *NFB* rates based upon a market survey of fees in the Northern District of California, conducted by Attorney Richard Pearl, the author of California Attorney Fees, 2nd Edition. From Mr. Pearl's survey, included herein as Exhibit 8, Mr. Rein's hourly rate of $495 is clearly within the median range for attorneys with 40 years experience, especially for those who are experts in their field of law.

The attorney fee rates requested in this motion by Paul Rein, Brian Gearinger, Julie Ostil and Celia McGuinness are below those awarded by this Court in *NFB v. Target* for attorneys with less experience, and below the median rates charged by the firms surveyed in Richard Pearl's declaration. In *NFB* the Court set rates for an attorney who graduated in 1985 at $625 per hour; and one who graduated in 1973 at $700 per hour. (See charts from pp. 18 and 19 of plaintiff's Target Memorandum, Exhibit 7.) By contrast, Paul Rein, who graduated from Boalt Hall in 1968, seeks approval at $495 per hour. In *NFB* the court set fees for an attorney who graduated in 1995 at $500 per hour. *Id.* By contrast, Celia McGuinness who graduated from law school in 1991, was California State Moot Court champion, has 18 years litigation experience, teaches legal writing at Hastings Law School, and was a professor at U.S.F. Law School, seeks only $395 per hour. In *NFB*, the Court set fees for an attorney who graduated in 2003 at $425 per hour. *Id.* By contrast, Julie Ostil, who graduated from Boalt Hall with honors in 2000, seeks $395 per hour. Brian Gearinger, who graduated from law school in 1989 and was admitted to practice in 1990, seeks $425 per hour. His associate attorneys, Stephen LaRoe and Mykola Kovalenko, seek hourly rates of $275 and $175, respectively. (See Gearinger Dec., ¶¶ 2–4, 5.)

### XI. Plaintiff's out-of-pocket litigation expenses and costs are reasonable and should be fully compensated

■ ADA § 505 of the allows recovery of costs and "litigation expenses," including expert witness expenses. (See DOJ Analysis, 28 CFR Pt. 36, App. B, § 36.505, "Litigation expenses include items such as expert witness fees, travel expenses, etc.") Expert witness fees were awarded per § 505 of the ADA in *Chabner v. United of Omaha Life Ins. Co.*, U.S.D.C., C95–0447 MHP, 1999 WL 33227443. An award of reasonable attorney fees also includes expenses of the type normally billed to a fee-

paying client as statutory "litigation expenses" per ADA § 505, 28 C.F.R. § 36.505 and Code of Civil Procedure § 1021.5. In this case, the litigation expenses and costs incurred by Plaintiff's attorneys at the Rein Law Office are $13,146. Of this, $11,354 relates to the expert consultant fees of access experts Barry Atwood and Karl Danz, who provided important consultation and reports after their personal site inspections. Mr. Atwood also participated in meetings with Defendants and their experts regarding injunctive relief, attended the mediation, and would have provided significant evidence to support Plaintiff's anticipated motion for summary adjudication had this case not settled. (See Exhibit 10, Atwood report, and see Rein Dec., ¶¶ 6,18, and Group Exhibit 4, for details of litigation expenses and costs necessarily advanced.)

As detailed in the Rein Dec., ¶¶ 18 and 51, Plaintiff requests a total of $13,146 in litigation expenses and costs.

## XII. Itemization of Plaintiff's Attorney Fees, Litigation Expenses and Costs Through Filing of the motion for attorney fees and costs

Plaintiff's attorneys supplied to the Court copies of Plaintiff's counsel's time sheets and billing records and a breakdown of all costs with verifications. Declarations by attorneys Paul Rein, Brian Gearinger, Julie Ostil, Celia McGuinness and Ann Winterman, and by paralegals Aaron Clefton and Katherine Castro, support the following computation of attorney fees, litigation expenses and costs, per ¶ 53 of the Rein Declaration. (Additional "fee work" will be required for Plaintiff's "Reply" memorandum, and for any court hearing.)

### Rein Office Attorney Fees

Paul Rein, Esq. 82.2 hrs. @ $495/hr.= $40,689
Julie Ostil, Esq. 30.6 hrs. @ $395/hr.= $12,087
Celia McGuinness, Esq. 6.1 hrs. @ $395/hr.= $ 2,410
Ann Winterman, Esq. 10.4 hrs. @ $225/hr.= $ 2,340
Aaron Clefton, Law Clerk 14.1 hrs. @ $165/hr.= $ 2,327
Katherine Castro, Paralegal 2.8 hrs. @ $100/hr.= $ 280
TOTAL      $60,133

### Gearinger Office

Brian Gearinger, Esq. 67.4 hrs. @ $425/hr.= $28,645
Stephen LaRoe, Esq. 7.2 hrs. @ $275/hr.= $ 1,980
Mykola Kovalenko, Esq. 7.1 hrs. @ $175/hr.= $ 1,243
TOTAL      $31,868

Total fees for Plaintiff's attorneys fees: $92,001
Litigation expenses and costs: $13,146
Total attorney fees, litigation expenses and costs: $105,147

## XIII. CONCLUSION

Plaintiff's attorney fees, litigation expenses and costs are reasonable and should be fully compensated. No multiplier enhancement of fees is requested, although this case was handled on a contingent risk basis. Full lodestar fees should be awarded in light of the importance of lawsuits to enforce the rights of disabled persons (cf. *Walker and Adams v. Carnival Cruise Lines, Inc.,* 63 F.Supp.2d 1083 (N.D.Cal.1999)), and the risks that Plaintiff's attorneys took in handling this contested case on a contingent fee basis.

It must be remembered that an award of attorneys' fees is not a gift. It is just

compensation for expenses actually incurred in vindicating a public right. To reduce the attorneys' fees of a successful party because he did not prevail on all his arguments, makes it the attorney, and not the defendant, who pays the cost of enforcing the public right.

*Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 273, 237 Cal.Rptr. 269

Obtaining the court-enforceable Consent Decree achieved all of Plaintiffs' public interest objectives as to injunctive relief under the ADA and California law, in addition to recovery of significant state law damages for the disabled plaintiff. Plaintiff's counsel are entitled to their full attorney fees, litigation expenses and costs, with the minor exceptions noted in the body of this Report.

Respectfully submitted.

DATED: July 1, 2010